1998 OK CR 15

**Tyrone Peter DARKS, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

No. F–95–1388.

Court of Criminal Appeals of Oklahoma.

Feb. 12, 1998.

Rehearing Denied March 17, 1998.

Diane Box, Oklahoma City, for Defendant at trial.

Richard Sitzman, Assistant District Attorney, Norman, for the State at trial.

Jamie D. Pybas, Appellate Defense Counsel, Norman, for Appellant on appeal.

Richard Sitzman, Asst. District Attorney, Norman, for the State at trial.

W.A. Drew Edmondson, Attorney General of Oklahoma, Robert Whittaker, Assistant Attorney General, Oklahoma City, for Appellee on appeal.

### OPINION

JOHNSON, Judge.

¶1 Tyrone Peter Darks, hereinafter "Appellant," was tried and convicted by jury of the crime of Murder in the First Degree, malice aforethought, in Case No. CF–94–1024 in the District Court of Cleveland County before the Honorable William C. Hetherington, Jr., District Judge. The jury found one aggravating circumstance: that Appellant would constitute a continuing threat to society. The trial judge sentenced Appellant in accordance with the jury's recommendation of death. From this judgment and sentence, Appellant has perfected this appeal.

### Facts

¶2 On Sunday, August 7, 1994, Sherry Goodlow, the decedent in this case, went to church with her two-year-old son, Scott, and her friend, Shurl Gabriel. After the services, they went grocery shopping in Del City, Oklahoma. According to the store receipt, the purchase was consummated at 2:19 p.m. and Ms. Gabriel went home. At 2:52 p.m., Ms. Goodlow called 911 from a pay telephone north of Reno on Eastern Avenue and reported that Appellant, her ex-husband and father of Scott, ran her off the road and took their son. After explaining she had legal custody of Scott, she was advised that an officer would meet her at Appellant's residence. At 3:09, Ms. Goodlow made another 911 call to inquire of the whereabouts of the officer. At 3:15, Sergeant Ken Davis, Oklahoma City police officer, received the dispatch to go to Appellant's residence. When

the officer subsequently arrived at 3:27 p.m., he found neither Ms. Goodlow nor Appellant and was told by Appellant's mother that she had not seen or heard from Ms. Goodlow.

¶3 Jamey Harrison testified that on that same afternoon, he was working outside on the driveway of his home located near S.E. 89th and Westminster Road, east of Lake Stanley Draper, when a black male drove into his driveway. At trial, Mr. Harrison identified the vehicle from photographs as Appellant's vehicle. Thinking the man may have wanted directions, Mr. Harrison walked toward the vehicle which slowly backed out while the driver kept looking at Mr. Harrison. Mr. Harrison then noticed a small white vehicle with a black driver stopped at the intersection of 89th and Westminster. The white vehicle took off "real fast." Appellant's vehicle accelerated and turned behind the white vehicle. Mr. Harrison lost sight of both vehicles after they turned the corner. Approximately 10 to 15 minutes later, Mr. Harrison heard what sounded like exploding firecrackers coming from the direction southwest of his home.

¶4 Mark Folks testified that sometime after 3:00 p.m. on the same afternoon, he was working on his pickup truck in his home shop located near 97th and Westminster Road when he heard his dogs barking. He went outside and saw a black female driver in a white Mustang sitting in his driveway in front of the steel gate of his home. When Mr. Folks was about halfway to the vehicle, the woman backed out of the driveway and drove south to the intersection of Westminster and Draper Drive. Mr. Folks could hear the woman screaming. Thinking the woman may be in danger, Mr. Folks ran back to his shop and got into his pickup to follow the woman. When Mr. Folks got to the corner of Westminster, he did not see the vehicle. He turned south, drove a short distance and turned back around. When he got back to the intersection of Westminster and Stanley Draper Drive, Mr. Folks saw tire tracks in the grass along the north side of Stanley Draper Drive. Mr. Folks followed the tracks into the brush, discovered Ms. Goodlow's vehicle with the engine still running and the lights still flashing. Mr. Folks

called out to determine if anyone would answer. When he got no response, Mr. Folks went back to his house and called 911. Mr. Folks then went to his neighbor's home where Oklahoma City Police Office Heinken lived. Officer Heinken was not at home. Mrs. Heinken accompanied Mr. Folks to the vehicle. As he approached the vehicle, he noticed the windows were down approximately four (4) inches on each side and Ms. Goodlow lying across the seat.

¶ 5 Richard Maytubby testified he was a cell-mate of Appellant while they were at the Oklahoma City jail. During a conversation among the other cell-mates, Appellant admitted he killed his girlfriend. According to Maytubby, Appellant told them his girlfriend was coming from church and somewhere on the east side [of the city], he got his son from her and put him into his car. She followed him up to Draper Lake. When he got there, he shot her twice in the head and three or four times in the back with a .38 caliber gun. She was sitting in the car, her foot on the brake, and the car still in drive when he shot her.

¶ 6 By stipulation, Gordon Robertson, ballistics expert for the State, testified that the three bullets recovered from the victim's body and the one recovered from her car were all consistent with a .38 caliber.

¶ 7 Other facts will be discussed as pertinent to the relevant propositions of error.

## PRETRIAL ISSUES

### A.

¶ 8 In his sixth proposition of error, Appellant claims the trial court never acquired subject matter jurisdiction because the Information failed to allege all of the elements of malice murder, specifically, the element "malice aforethought," on which the jury was instructed. Appellant acknowledges our ruling in *Parker v. State*, 917 P.2d 980 (Okl.Cr.1996), *cert. denied*, — U.S. —, 117 S.Ct. 777, 136 L.Ed.2d 721 (1997), where we held that "any failure to allege facts constituting the offense raises due process questions but does not affect the trial court's jurisdiction." *Id.* at 985. We further held that "a trial court's jurisdiction is trig-

gered by the filing of an Information alleging the commission of a public offense with appropriate venue." *Id.* Thus, a due process violation due to insufficiency of the Information does not necessarily mean that jurisdiction was not conferred.

¶ 9 However, Appellant asks this Court not to apply this new rule retroactively and submits that to do so is in violation of Oklahoma case law and is fundamentally unfair under federal and state constitutional provisions for due process of law and equal protection of the laws. Appellant relies on several cases where this Court did not apply new state law rules retroactively, regardless of whether the rule works to the benefit or detriment of the defendant. *See Cargle v. State*, 909 P.2d 806, 828–829 (Okl.Cr.1995), *cert. denied*, — U.S. —, 117 S.Ct. 100, 136 L.Ed.2d 54 (1996); *Wallace v. State*, 893 P.2d 504, 512–513 (Okl.Cr.), *cert. denied*, 516 U.S. 888, 116 S.Ct. 232, 133 L.Ed.2d 160 (1995); *Salazar v. State*, 852 P.2d 729, 737 (Okl.Cr. 1993); *Salazar v. State*, 859 P.2d 517, 518–19 (Okl.Cr.1993).

¶ 10 Appellant thus asks this Court to follow *Revilla v. State*, 877 P.2d 1143, 1148 (Okl.Cr.1994), *cert. denied*, 513 U.S. 1096, 115 S.Ct. 764, 130 L.Ed.2d 661 (1995) and *Pickens v. State*, 885 P.2d 678, 684 (Okl.Cr.1994) where this Court held that the failure to use the term "malice aforethought" in a first degree murder Information did not properly charge the defendant with malice murder. However, in the recent decision of *Cudjo v. State*, 925 P.2d 895 (Okl.Cr.1996), *cert. denied*, — U.S. —, 117 S.Ct. 981, 136 L.Ed.2d 863 (1997), this Court held that the phrases "with premeditated design" and "malice aforethought" clearly conveyed the same meaning and that any subtle differences between the two terms are inconsequential. Additionally, this Court expressly overruled *Pickens* insofar as it was inconsistent with this holding.

¶ 11 In light of the foregoing, the use of the phrase "with premeditated design" in the instant case was sufficient to advise Appellant that he was charged with "malice aforethought" murder. Thus, Appellant's contention that the trial court lacked subject matter

jurisdiction is without merit. This proposition of error is denied.

### B.

¶ 12 In the first subproposition raised in Appellant's second proposition of error, Appellant contends that there was no probable cause to place him under arrest and therefore all evidence obtained as a result of the warrantless and illegal arrest was inadmissible. We note that this issue is raised for the first time on appeal. The record reveals that Appellant objected to the admission of the videotaped interview, Exhibits 57 and 58,[1] on the grounds that 1) the interview was designed to portray Appellant in an unfavorable light for later presentation to the jury and 2) the interview was conducted for the purpose of preserving a record for a death penalty case by showing Appellant's lack of remorse. No objection was raised as to Appellant's arrest.

¶ 13 This Court has long held that failure to timely object to the legality of an arrest prior to entering a plea to the charges waives appellate review of the issue. *Clayton v. State*, 840 P.2d 18, 28 (Okl.Cr.1992), *cert. denied*, 507 U.S. 1008, 113 S.Ct. 1655, 123 L.Ed.2d 275 (1993); *Holliday v. State*, 755 P.2d 124, 126 (Okl.Cr.1988); *Carter v. State*, 738 P.2d 562, 563 (Okl.Cr.1987); *Miles v. State*, 416 P.2d 964, 965 (Okl.Cr.1966). Accordingly, this subproposition of error is waived.

¶ 14 In his second subproposition, Appellant claims that Exhibits 57 and 58 should have been excluded because they contained improper, prejudicial comments and opinions by the interviewing detectives. Specifically, Appellant complains of the statements and comments by the detectives 1) that they [the detectives] knew Appellant killed his ex-wife; 2) that Appellant was lying and was a liar; 3) that Appellant was a cold blooded killer; and 4) that Appellant had his son with him when he killed his ex-wife. Appellant contends the prejudicial effect of the statements and comments outweighed the probative value of the videotape since the videotape was not probative of any issue presented during the State's case-in-chief. Appellant concedes the only conceivable evidentiary value of the videotape might have been to establish Appellant's whereabouts as rebuttal to his alibi witnesses. We do not agree. We find the videotape was relevant and probative of Appellant's demeanor which was evidence of his guilt or innocence. However, the State failed to address and we fail to see how the detectives' statements and comments are probative of any relevant issue.

¶ 15 The record reveals that both the prosecutor and the trial judge conceded that the statements and comments of the detectives were irrelevant. Thus, prior to the playing of the tapes, the trial judge admonished the jury to ignore as evidence the personal observations and comments made by the detectives and to focus on the statements of Appellant in terms of the evidence to be considered by them during the course of the trial. After the playing of the tape, the trial judge again admonished the jury that the comments and observations made by the detectives were not evidence, but merely interview techniques used by detectives as part of the interview process. While we find the detectives' statements and comments should have been redacted from the videotape, we find the trial court's admonitions more than adequate in effectively curing any error. Additionally, we do not find the error outcome determinative. *See Al–Mosawi v. State*, 929 P.2d 270, 284 (Okl.Cr.1996), *cert. denied*, —— U.S. ——, 118 S.Ct. 145, 139 L.Ed.2d 92 (1997). This subproposition is denied.

### C.

¶ 16 In his third proposition of error, Appellant asserts that his alleged confession to jailhouse informant Richard Maytubby should have been suppressed because it was the fruit of an illegal detention in violation of his Fourth and Fourteenth Amendment rights. Specifically, he claims the alleged confession was the fruit of an illegal

---

1. Exhibit 57 is the original videotaped interview which was admitted into evidence. Exhibit 58 is the edited version of the videotaped interview which was shown to the jury.

detention beyond 48 hours.[2] The record reveals authorities arrested Appellant without a warrant on the evening of August 7, 1994, and held him in the Oklahoma City jail. On August 11, 1994, a probable cause determination was made to issue a Felony Warrant and an Information was filed.

¶ 17 In *Black*, this Court held there is a presumption any evidence gathered after the expiration of the 48–hour period without a probable cause hearing is inadmissible. 871 P.2d at 39. We also held that the admission of evidence gathered after forty-eight (48) hours of detention is subject to harmless error analysis. *Id.* at 39–40. We found "the longer the time a defendant sits in jail without some form of probable cause hearing, the more likely the detention will become oppressive to him and the more likely he will be coerced into giving evidence he otherwise would not give. . . ." *Id.* at 39.

¶ 18 In the case at bar, we find Appellant was held longer than 48 hours without a determination of probable cause. However, we do not find that Appellant was coerced into giving evidence he otherwise would not give. The record reveals that Appellant was in the Oklahoma City jail when Mr. Maytubby arrived. Mr. Maytubby testified that he had been in jail three days before Appellant and other guys in their holding cell began talking about what they had done. It was then and under those circumstances that Appellant voluntarily confessed to Mr. Maytubby and others. Clearly, Appellant's confession was not a product of an illegal detention. This proposition of error is denied.

## JURY SELECTION ISSUES

¶ 19 In his seventh proposition of error, Appellant sets forth the following three instances[3] where he claims constitutional errors in the *voir dire* deprived him of a jury impaneled in compliance with the Fourteenth Amendment requiring reversal of his conviction and sentence.

### A.

¶ 20 First, he asserts the trial court improperly and prejudicially telegraphed to the jury its opinion that death should be assessed as punishment. Specifically, he contends the following colloquy, conducted individually in the judge's chambers, constituted an impermissible concentration on the death penalty to the exclusion of other punishments and signaled the judge's insistence that the death penalty be strongly considered:

> THE COURT: Ms. Livengood, I'm sure you're nervous, but I want you to relax. I know it's hard to do in a situation like this, and I'm sure you're apprehensive and uncomfortable, but this is one of those situations, as I think you can tell, ma'am, that we need for you to be honest with us and very open and forthright and candid with us.
>
> I am going to ask you a question, and ask you to respond to this question. In case where the law and the evidence warrants, in a proper case, could you consider the death penalty **as one of the punishment alternatives?** (Emphasis added.)

¶ 21 First, in no way can it be said that the above inquiry is an opinion or otherwise that the trial judge expressed that death should be given in this case. Second, the record does not bear out any of Appellant's concerns that the jury was not aware or otherwise not advised of the punishment alternatives of life and life without parole. Each juror was specifically questioned by defense counsel as to these alternatives and specifically asked if he or she could consider them. We find no merit to this allegation.

---

**2.** Appellant cites 22 O.S.1991, § 181, which reads: "The defendant must, in all cases, be taken before the magistrate without necessary delay." Appellant also relies on *Black v. State*, 871 P.2d 35, 39 (Okl.Cr.1994) where this Court, relying on *County of Riverside v. McLaughlin*, 500 U.S. 44, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991), recognized that any delay longer than 48 hours in getting a defendant to a probable cause hearing is unreasonable.

**3.** In his eleventh proposition of error, Appellant alleges as error his absence during individual *voir dire* of the jury. This allegation will be discussed under that proposition of error.

## B.

¶ 22 Appellant next complains the trial court's striking of two jurors *sua sponte* for cause when each expressed they could not consider the death penalty was a violation of *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). Specifically, Appellant claims that *Witherspoon* holds a trial judge can excuse a juror for cause only upon a motion by the State. We find no such holding in *Witherspoon*. This allegation is without merit.

## C.

¶ 23 Here, Appellant contends he was not accorded his full panoply of peremptory challenges. Our review of the record does not support this contention. Contrary to Appellant's claim, as shown on the jury list in the original record, venire-persons Byram and Rodden were excused as Appellant's peremptory challenges, not the State's. Consequently, Appellant was accorded his nine peremptory challenges. This contention is without merit. Having found no merit to any of the allegations, this proposition of error is denied.

## ISSUES RELATING TO GUILT/INNOCENCE

## A.

¶ 24 In his first proposition of error, Appellant asserts there was insufficient evidence to support the jury's verdict that he was guilty of murder in the first degree. Appellant bases his assertion on his claim that Mr. Maytubby's testimony was totally incredible because Mr. Maytubby was a convicted felon for crimes involving dishonesty, further he had received a suspiciously good deal from the State prior to his testimony. Appellant claims this case was totally circumstantial and no rational trier of fact could have found the State proved every essential element of the crime beyond a reasonable doubt. *Spuehler v. State*, 709 P.2d 202, 203–204 (Okl.Cr.1985).

¶ 25 Upon review of the record, there is sufficient evidence. The State proved Appellant had a motive to kill decedent. Further, he was the last person known to have seen decedent. His car was seen accelerating and turning behind decedent's car east of Draper Lake a short time before decedent was killed. Most importantly, Appellant confessed to the killing. The information Appellant provided in his confession was virtually identical to the evidence developed from the crime scene. Not only was the confession complete but even greater it was made before Maytubby knew of the crime or circumstances. While there were discrepancies in the testimony of certain State witnesses, any of the discrepancies were minor.

¶ 26 We have addressed previously the admissibility of Maytubby's testimony in light of Appellant's contention that his confession was the fruit of an illegal detention and found the confession was voluntary. Thus, Maytubby's testimony was admissible. Whether to believe him or not was up to the jury who could properly judge his credibility[4] based on his testimony [which included questions about his convictions and any deal offered by the State] and demeanor. *Perry v. State*, 764 P.2d 892, 895–896 (Okl.Cr.1988). It is obvious from the verdict that the jury chose to believe Maytubby despite defense counsel's attempts on cross-examination to expose bias and lack of credibility. Appellant provides no authority or persuasive reason to invade the province of the jury on this issue and we decline to do so. Therefore, this proposition of error is denied.

## B.

¶ 27 In his fourth proposition of error, Appellant claims the trial court committed reversible error when it allowed the admission of State's Exhibit 59. The exhibit was a Divorce Decree granting custody to Appellant, later determined to be forged. At trial, Appellant objected to its admission on the grounds that the testimony regarding the document and the document itself constituted a violation of *Burks v. State*, 594 P.2d 771

---

4. Appellant does not challenge that his alleged confession was not corroborated properly, but appears to argue that Maytubby's credibility made his testimony totally incredible and not to be believed at all.

(Okl.Cr.1979), *overruled in part on other grounds, Jones v. State,* 772 P.2d 922 (Okl. Cr.1989). The State argued the document was admissible to show the chronology of the divorce and to establish Appellant's motive for the murder. An *in camera* hearing was held and the trial judge sustained Appellant's objection to the extent the witness was cautioned to stay away from testimony concerning other crimes or bad acts.

¶ 28 During the direct examination of the witness, he was asked whether the court entered a finding of fact as to whether the Divorce Decree in question bore the signature of the decedent or not. The witness responded that the court did. When asked if the document was vacated, the witness responded in the affirmative. Appellant asserts that this testimony was tantamount to the witness testifying that he had forged the document. Appellant urges that this implication was later confirmed for the jury when the decedent's father, in an unresponsive answer, testified Appellant had forged a divorce decree. This testimony was met with an admonishment to the jury to disregard the unresponsive answer. Appellant also claims the trial court's admission of the document into evidence at the close of the State's case only compounded the error by emphasizing the decedent's father's testimony.

¶ 29 While we find the admission of the document erroneous, given the overwhelming evidence of guilt, we conclude the admission of this evidence had no effect whatsoever on the determination of guilt and is harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). This proposition of error is denied.

### C.

 ¶ 30 In his fifth proposition of error, Appellant asserts the trial court committed reversible error in failing to instruct the jury on the lesser included offense of Manslaughter in the First Degree. Specifically, he contends the State presented evidence showing he and the decedent had a love/hate relationship, had filed for a Victim Protection Order against each other, and were involved in a heated custody battle. Appellant contends this evidence "was fertile ground" for a heat of passion manslaughter instruction.

 ¶ 31 This Court has repeatedly held that an instruction on a lesser included offense need only be given when there is evidence that tends to prove the lesser included offense was committed. Absent such evidence, an instruction should not be given. *See Rawlings v. State,* 740 P.2d 153, 160 (Okl.Cr.1987). Heat of Passion Manslaughter and Manslaughter by Means of a Dangerous Weapon all include a similar element: a showing that there was no premeditated design to effect death. Here, Appellant shot the decedent four times at close range in vital areas of her body: twice to the head and twice to the trunk of her body. As such, the trial court properly did not instruct of First Degree Manslaughter. This proposition of error is denied.

### D.

¶ 32 In his eighth proposition of error, Appellant complains the trial court committed reversible error in allowing the jury to take notes into the jury room during deliberation. Appellant relies on *Glazier v. State,* 514 P.2d 87 (Okl.Cr.1973), where this Court comments that jurors should not be allowed to take notes into the jury room while deliberating. However, in *Cohee v. State,* 942 P.2d 211 (Okl.Cr.1997), this Court repudiated these comments, holding them to be *dicta.* In holding that jurors may take their notes into the jury room during deliberations, this Court accordingly adopted appropriate guidelines which we encouraged district courts to follow when conducting jury trials in criminal cases. *Id.* at 213. Accordingly, this proposition of error is denied.

### ISSUES RELATING TO SENTENCING

### A.

¶ 33 In his eleventh proposition of error, Appellant asserts the trial court committed fundamental error in allowing critical portions of his trial to be conducted in his absence. Appellant complains that he was not present during individual *voir dire* of the jurors and the sentencing phase of his trial

and that the record is insufficient to establish he expressly and unequivocally waived his right to be present at these critical portions of the trial.

¶ 34 In Oklahoma, a defendant must be personally present at a trial if he is being prosecuted for a felony. 22 O.S.1991, § 583. Additionally, 22 O.S.1991, § 912 mandates a defendant's presence when a verdict is returned. In *Peters v. State*, 516 P.2d 1372, 1374–75 (Okl.Cr.1973), this Court held the right of an accused to attend his felony trial is not an absolute right and may be waived. Further, we have consistently held that an accused's right to be present in open court during a felony trial is waived by his voluntary absence. *See Gregg v. State*, 844 P.2d 867, 877 (Okl.Cr.1992) and the cases cited therein.

¶ 35 Appellant does not contend nor does the record reveal that the trial judge prevented Appellant from attending any proceeding during the trial. It appears from our review of the record that Appellant voluntarily absented himself from the proceedings.[5] As to his absence from individual *voir dire*, Appellant relies on *United States v. Crutcher*, 405 F.2d 239, 244 (2nd Cir.1968) (A defendant's absence during the impaneling of a jury might be too basic to ever be treated as harmless error as his absence during jury selection might prejudice him in ways impossible to determine on an appellate record.) There is no way to assess the extent of prejudice, if any, a defendant might suffer by not being able to advise his attorney during jury selection. Absence from jury selection would deny the defendant his prerogative to challenge a juror simply on the basis of sudden impressions and unaccountable prejudices that we are apt to conceive upon the bare looks or gestures of another. *Crutcher* can be distinguished on the facts. In that case, the defendant was not present at the trial but was in another state. Additionally, there was nothing in the record from which the appellate court could infer that the defendant was advised of his rights and that he knowingly and voluntarily agreed to proceed with the jury that has been impaneled.

¶ 36 In this case, the record further reveals that notwithstanding Appellant's desire not to be present at his sentencing proceedings, the trial judge made it very clear that any time defense counsel or Appellant changed her or his mind, he would secure Appellant's presence stating as follows:

> THE COURT:. . . . I would say, Ms. Box, that in the event that you believe you ought to, on your own, visit with him again about it, for the purpose of either testifying, which certainly is his right in this phase if he chooses to, or if you feel like once you've heard testimony that gives you reason to believe that you need to try to talk him into testifying in his behalf, insisting that he does, or if, in fact, you want this Court to order him to appear and testify in his behalf during the second phase, I will do so, if that's your judgment and your decision that needs to be done in light of events that occur during the course

5. Prior to individual *voir dire*, the following bench conference was had outside the hearing of the jury:

> MR. SITZMAN: I spoke with Ms. Box just a moment ago and asked her if we were going to be bringing the defendant with us in chambers, and she indicated that—if I may speak for you—
> MS. BOX: Yes.
> MR. SITZMAN:—that it was her desire not to bring him in. And I presume that it is agreeable with her client.
> MS. BOX: Yes, it is.
> THE COURT: Okay. Let's go on back to my chambers and get started with the individual *voir dire*.

Following the guilty verdict, Appellant advised defense counsel he did not desire to be present for the sentencing phase. The trial judge requested defense counsel be accompanied by Captain Lawrence McKiddy [a jailer] to visit Appellant in his jail cell to give him an opportunity to be present for the sentencing phase of his trial. McKiddy and David Butler [a defense investigator] were present in the jail when defense counsel visited Appellant and both supported defense counsel who informed the trial judge Appellant did not want to be present. Defense counsel informed the trial court that, among other things, she explained to Appellant, not only his absolute right to be present, but also his right to testify, if he so chose. The trial judge correctly determined from this testimony that Appellant's desire not to be present during the second phase of his trial was "affirmative and express."

of these proceedings, I will do so. All you need to do is ask.

MS. BOX: I will do so, your Honor.

THE COURT: And if that's your judgment, I certainly will do so. So keep that in mind, and then if you feel like you need to do that, please let me know at any time, and we'll either bring him over and have an in camera hearing with him, or if it's your desire and your request, I will order him to be here, one way or the other, involuntarily or otherwise, and we'll proceed as best we can. Anything further?

¶ 37 The record reveals that during the State's second closing argument, defense counsel interrupted and asked to approach the bench. Outside the hearing of the jury, defense counsel informed the trial court that Captain McKiddy informed her that Appellant now wished to be present immediately and did not want to be "dressed out." The trial court determined that it would be prejudicial to Appellant, based upon his disruptive behavior and state of mind the day before, to have him interrupt closing arguments. However, the trial judge stated he would entertain Appellant's presence at the receiving of the verdict "with close and careful admonitions." After the jury retired to deliberate, the trial court informed defense counsel that she should again visit with Appellant to inquire whether he wished to be present to receive the verdict. Prior to the jury returning the verdict, the following transpired:

THE COURT: Prior to the jury returning the verdict, let me make a record again with respect to Mr. Darks' right to be present in court to receive the verdict. Ms. Box, we visited a little bit about this. You have talked to him about his right to be present in court and receive the verdict. Is that correct ma'am?

MS. BOX: Yes sir, your honor.

THE COURT: Do you have an opinion one way or the other what his desire are [sic]?

MS. BOX: I believe that he still desires not to be here, your Honor. I will tell the Court that I told him if he should change his mind or whatever to send word. We

know he did that once before, so I think he would have done that if he had changed his mind.

THE COURT: Okay. So as his attorney, you believe he voluntarily and of his own—

MS. BOX: Yes, absolutely.

THE COURT:—free will chooses not to be here?

MS. BOX: Absolutely.

 ¶ 38 Appellant relies on *Rice v. Wood*, 44 F.3d 1396, 1401 (9th Cir.1995) (state trial court's erroneous decision to proceed with verdict announcement in accused's absence, during penalty phase of capital murder prosecution, was structural defect in criminal proceedings that was not subject to harmless error analysis in subsequent *habeas* proceeding). However, in that case, the court further holds a defendant can waive that right provided he does so voluntarily, knowingly, and intelligently. *Id.* at 1400. In the case at bar, we find that Appellant voluntarily, knowingly, and intelligently waived his right to be present both during individual *voir dire* and during his sentencing proceedings. Although such a waiver may be inferred from the record,[6] we find the preferred practice would be for the trial court, **on the record**, to advise the defendant of his rights and, if the defendant desires, obtain an intelligent and knowing waiver.

¶ 39 Appellant urges this Court to reconsider and follow the dissent of Judge Chapel in *Brown v. State*, 871 P.2d 56, 78–79 (Okl. Cr.), *cert. denied*, 513 U.S. 1003, 115 S.Ct. 517, 130 L.Ed.2d 423 (1994), as well as authority from other jurisdictions, and find that an in-custody capital defendant cannot voluntarily absent himself from critical stages of his capital trial. We decline to do so. This proposition of error is denied.

**B.**

 ¶ 40 In his twelfth proposition of error, Appellant submits that his death sentence was imposed in violation of his Eighth and Fourteenth Amendment rights because the evidence was insufficient to support the continuing threat aggravating circumstance.

---

**6.** *See Echert v. United States*, 188 F.2d 336 (8th Cir.1951).

During the second stage of his trial, the State presented several witnesses who testified to more than sixteen occasions involving incidents between Appellant and the decedent where Appellant was arrested as a suspect in domestic disputes involving assault and battery. Another witness testified of an incident at a mall where he witnessed Appellant grabbing the decedent from behind by the neck and attempting to take the couple's baby out of the stroller. The decedent's father testified he saw Appellant shattering the decedent's front and rear windows of her automobile. The decedent's mother testified Appellant called her and laughed about his spray painting the decedent's automobile and asking her if she had fun getting the paint off the car. Evidence had been presented during the first stage by the decedent's father that on Friday August 5, 1994, Appellant called and told him to tell his daughter to get her insurance papers up to date because he was going to "put a cap in her."

¶ 41 In *Johnson v. State*, 665 P.2d 815, 822 (Okl.Cr.1982), this Court held that prior unadjudicated acts of violent conduct are relevant to the determination of whether a defendant is likely to commit future acts of violence that would constitute a continuing threat to society. We find such evidence to be relevant in the jury's determination as to whether a person has a propensity to commit criminal acts in the future. We also find that the callous nature of the crime and Appellant's blatant disregard for the importance of human life are evidence sufficient to support this aggravating circumstance [7]. This proposition of error is denied.

### C.

¶ 42 Appellant next argues his death sentence should be vacated and his sentence modified because the continuing threat aggravating circumstance is unconstitutionally vague. This Court has repeatedly rejected this argument and we are not persuaded to alter our prior position. *See Malone v. State*, 876 P.2d 707, 715–16 (Okl.Cr. 1994) and cases cited therein; *Walker v. State*, 887 P.2d 301, 320 (Okl.Cr.1994), *cert. denied*, 516 U.S. 859, 116 S.Ct. 166, 133 L.Ed.2d 108 (1995). Appellant's proposition is without merit.

### D.

¶ 43 In his fourteenth proposition of error, Appellant asserts his death sentence must be vacated because the use of victim impact evidence violated his rights under the Eighth and Fourteenth Amendments of the United States Constitution and Article II, §§ 7 and 9 of the Oklahoma Constitution. Appellant sets out four areas of concern which he deems are not harmless error.

¶ 44 First, Appellant asserts the victim impact evidence exceeded the limitation of "financial, emotional, psychological, and physical effects" of the crime itself on the victim's survivors [8] and violated the rules of evidence. Here, Appellant refers to the admission of 1) a photograph of the decedent smiling broadly and 2) a photograph of the decedent holding her young son. He relies on this Court's conclusion in *Cargle* holding the admission of photographs of homicide victims taken while they are alive are generally inadmissible. *Id.* at 830 and reaffirmed in *Al-Mosawi v. State*, 929 P.2d at 285. We agree the trial court erred in admitting the photographs in question. However, the erroneous admission is subject to the harmless error analysis. *Id.* at 285; *Cargle*, 909 P.2d at 835. Having found sufficient evidence to support the aggravating circumstance of continuing threat and having found the evidence in support of said circumstance outweighed the mitigating evidence, the error is harmless beyond a reasonable doubt.

¶ 45 Second, Appellant relies on *Cargle* to support his argument that the trial court

---

7. Appellant ran the victim off the road and took their son from her. According to the discussion Appellant had with Maytubby, the victim followed him to Draper Lake. Appellant said when they stopped, he shot her twice in the head and three or four times in the back. The victim's car was in drive and her foot was still on the brake.

[There was no evidence of provocation by the victim.] Appellant told Maytubby that he would plead insanity, do five years and get out.

8. *Cargle v. State*, 909 P.2d 806, 828 (Okl.Cr. 1995).

violated his right to pretrial discovery by permitting the State, over his objection, to present victim impact testimony after having failed to provide him with a Victim Impact Statement or a significant summary of such Statement. Appellant also relies on *Cargle* to support his third argument that the trial court failed to conduct an in camera hearing to determine the admissibility of the evidence. Appellant submits that in this case, neither the trial court nor the defense was aware of what was going to be said, much less how prejudicial and emotional the evidence was going to be.

¶ 46 First, we note that Appellant has failed to show and we fail to see how he was prejudiced by the victim impact testimony given in this case. A review of the record reveals the sum total of the victim impact testimony consisted of the following:

Testimony of Victim's Mother

Q. What has been the impact on you of the murder of your daughter?

R. It cased a lot of difficulties with Scott. He had a lot of medical problems. It just interrupted our life.

Testimony of Victim's Father

Q. Since her death what impact has her being gone had upon you, and any observation that you might have as to Scott?

R. I've always felt a mother should raise her own kid, but Scott has no mother now. And like this morning he was— I was watching the news, and he said, I want to see my mommy. I mean, it hurts. I breaks [sic] down whenever I hear him say this. It hurts.

¶ 47 First, we find the victim impact evidence was well within the limitation of "financial, emotional, psychological, and physical effects" of the crime itself on the victim's survivors and was not prejudicial. Secondly, we find that any failure to provide a Victim Impact Statement and to hold an *in camera* hearing on the admissibility of same is harmless beyond a reasonable doubt. Accordingly, these arguments are without merit.

¶ 48 Lastly, Appellant complains his jury was not instructed on the legal effect that it was to give the victim impact evidence. Appellant did not offer any instruction on victim impact evidence, and did not complain that the trial judge did not administer one. On appeal, Appellant has failed to demonstrate how the lack of an instruction has harmed him, how the jury's sentencing discretion was improperly channeled, or how the jury was influenced by the victim impact evidence to impose a sentence not supported by the evidence. *See Charm v. State,* 924 P.2d 754, 766 (Okl.Cr.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1560, 137 L.Ed.2d 707 (1997). This argument and proposition are denied.

### E.

¶ 49 Appellant claims in his fifteenth proposition of error that his sentence of death was the result of coercion by the trial judge. The record reveals the jury had been out almost five hours when they were called into open court and asked how they were numerically divided. After the foremen replied, they were split 11–1, the trial court advised the jury to deliberate further with the proviso that "if upon further deliberation you are unable to agree unanimously as to a punishment recommendation I shall discharge you, and according to law, I must impose either a sentence of life or a sentence of life without parole." This language is contained in Oklahoma Jury Instruction 442 and tracks 21 O.S.1991, § 701.11.

¶ 50 Appellant relies on several cases where this Court held that this instruction is improper because it invites the jury to avoid or may improperly distract the jury from performing its difficult duty of passing sentence on the life of an accused. *Malone v. State,* 876 P.2d 707, 713 (Okl.Cr.1994); *Boltz v. State,* 806 P.2d 1117, 1125 (Okl.Cr.), *cert. denied,* 502 U.S. 846, 112 S.Ct. 143, 116 L.Ed.2d 109(1991); *Fox v. State,* 779 P.2d 562, 574 (Okl.Cr.1989), *cert. denied,* 494 U.S. 1060, 110 S.Ct. 1538, 108 L.Ed.2d 777 (1990). Appellant also relies on several cases where this Court held the language in OUJI–CR 442 is an instruction not for the jury, but for

the trial court and the jury should not be concerned with the trial court's supervisory role. *Fox v. State,* 779 P.2d at 574; *Johnson v. State,* 731 P.2d 993, 1005 (Okl.Cr.), *cert. denied,* 484 U.S. 878, 108 S.Ct. 35, 98 L.Ed.2d 167 (1987).

¶ 51 However, Appellant misreads the cited cases. Those cases involved a request for the instruction or the failure of the trial judge to give the instruction **before** any jury deliberations had taken place. Under those circumstances, the instruction is clearly improper. This Court has made clear a trial judge should not resort to giving the instruction until it is apparent the jury has exceeded a reasonable time for reaching a decision on punishment. *Hayes v. State,* 738 P.2d 533, 541 (Okl.Cr.1987). This is precisely what happened in this case. We find no merit in this proposition of error.

### F.

¶ 52 In his sixteenth proposition of error, Appellant contends the jury instructions did not accurately instruct the jury on the manner in which it was to use and consider evidence in mitigation. First, he argues the jury instructions failed to inform the jury that its findings regarding mitigating circumstances did not have to be unanimous. This argument was addressed and rejected in *Stiles v. State,* 829 P.2d 984, 997 (Okl.Cr. 1992). We need not address it again here. Second, Appellant contends the instructions given to the jury on the issue of mitigation permitted the jurors to ignore mitigating evidence altogether, and seriously diminished the effect on the mitigating evidence presented in this case. This argument was addressed and rejected in *Al–Mosawi,* 929 P.2d at 286. Third, Appellant complains that the trial court committed error when it failed to instruct the jurors that they could consider a sentence of life and life without parole even though they had found the existence of an aggravating circumstance. Such an instruction is not required in Oklahoma. *See Bryson v. State,* 876 P.2d 240, 262–63 (Okl.Cr. 1994), *cert. denied,* 513 U.S. 1090, 115 S.Ct. 752, 130 L.Ed.2d 651 (1995). In light of the foregoing, this proposition is denied.

### PROSECUTORIAL MISCONDUCT

¶ 53 According to Appellant in his ninth proposition of error, prosecutorial misconduct in both stages of trial deprived him of due process of law and a reliable sentence. The majority of these now challenged comments were not timely objected to at trial. Thus, as to these comments, Appellant has waived all but plain error. *Robinson v. State,* 900 P.2d 389, 395–96 (Okl.Cr. 1995). Concerning those comments which drew a proper objection [that the decedent was stalked by evil, that the self-contradictory statements of defense witnesses were not true, that the flat out contradiction of Judith McLendon's trial testimony by her taped statement indicated she had told a bold-faced lie, and that Maytubby had not been offered any consideration in exchange for his testimony], we find they were all based on the evidence and proper for comment. This Court has long recognized that the right of argument contemplates a liberal freedom of speech, and that the range of discussion, illustration, and argumentation is wide. *See Harvell v. State,* 395 P.2d 331, 339 (Okl.Cr. 1964), *rev'd on other grounds, Buis v. State,* 792 P.2d 427 (Okl.Cr.1990).

¶ 54 Appellant next attacks the following two statements made by the prosecutor during closing argument as shifting the burden of proof to him: "[a]nd when they chose to put on witnesses and prove his alibi, his physical alibi, that's their burden" and "[b]ut he who asserts must prove." We note the second comment is taken out of context, as follows:

> MR. SITZMAN: It does not remove my burden to prove him guilty beyond a reasonable doubt, **but he who asserts must prove.**

Viewing the statements as a whole, we do not find that the prosecutor shifted the burden of proof to Appellant. This Court has held a defendant who presents an alibi defense must show a state of facts which create a reasonable doubt of his presence at the time and place where the crime was committed. *Ashinsky v. State,* 780 P.2d 201, 205 (Okl.Cr. 1989); *Newbury v. State,* 695 P.2d 531, 537 (Okl.Cr.1985). We find no error.

¶ 55 Appellant also objected to the prosecutor's comment during second stage closing argument. The statement was improper and in error. The prosecutor went too far but the error is harmless due to the clear weight of the evidence. *Long v. State,* 883 P.2d 167, 177 (Okl.Cr.), *cert. denied,* 514 U.S. 1068, 115 S.Ct. 1702, 131 L.Ed.2d 564 (1994); *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967).

¶ 56 Appellant also complains of the prosecutor's comment that Appellant had forged State's Exhibit No. 59. We note that Appellant raises this ground for the first time on appeal. At trial, he objected on the ground that the document spoke for itself. This Court had held when a specific objection is made at trial, no different objections will be considered on appeal. *Hill v. State,* 898 P.2d 155, 164 (Okl.Cr.1995). Having waived the issue, this Court can review it only for plain error. We find no such error.

¶ 57 We likewise find no error in the Prosecutor's negative comments on Appellant's mitigating evidence. This issue was addressed and rejected in *Hamilton v. State,* 937 P.2d 1001, 1010–11 (Okl.Cr.1997).

¶ 58 Finally, Appellant claims the prosecutor unmistakably referred to pardon and parole and invoked societal alarm, when he argued that if Appellant got out of prison in "five years—10 years— or 15 years from now" and asked a judge to give him custody of his child, "[y]ou tell Mrs. Goodlow that she has nothing to fear."

¶ 59 While we agree that it is improper for the prosecutor to make reference to the reduction of a sentence by pardon or parole, such comments must be considered in light of the totality of the closing argument. *See Williams v. State,* 754 P.2d 555, 556 (Okl.Cr.1988). The appropriate test is as follows:

> Whether in light of the totality of the closing argument the prosecuting attorney makes such an unmistakable reference to the pardon and parole system of Oklahoma to result in prejudice to defendant.

*Id.,* citing *Richardson v. State,* 600 P.2d 361, 367 (Okl.Cr.1979). As applied to these facts, it cannot be said that the prosecutor made an unmistakable reference to the pardon and parole system. We find no error. Finding no prosecutorial misconduct, this proposition of error is denied.

## INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS

¶ 60 In his tenth proposition of error, Appellant raises claims of ineffective assistance of counsel, as follows:

A. Failure to move to challenge Appellant's defective arrest and illegal detention;

B. Failure to challenge objectionable jurors for cause;

C. Failure to request an instruction on First Degree Manslaughter;

D. Arguing facts during closing argument that undermined Appellant's alibi defense; and

E. Failure to object to instances of prosecutorial misconduct.

¶ 61 The merits of the claims set forth in A, B, C, and E are discussed in propositions two and three, seven, five, and nine, respectively. In sub-proposition D, Appellant asserts that defense counsel was ineffective for misstating six times during her closing argument that Officer K.W. Davis placed Appellant's vehicle at his residence at 3:40 p.m., and therefore it was impossible for Appellant's vehicle to have been at the murder scene and for him to commit the murder. The record reveals Officer Davis testified that when he went to Appellant's house at 3:27 p.m., he did not recall Appellant's vehicle being there. Appellant contends the misstatements by defense counsel placed great emphasis on establishing Appellant's alibi defense and opened the door to scrutiny by both the prosecutor and the jury, who Appellant claims most likely discounted the rest of his alibi.

¶ 62 We fail to follow Appellant's rationale. We have no reason to believe and Appellant has failed to show that the jury in its deliberations failed to determine the weight and credibility of the testimony of each witness, reconcile that testimony based on the motives of each witness, weigh the evidence, and resolve conflicts in that evi-

dence. *Cf. Plantz v. State,* 876 P.2d 268, 281 (Okl.Cr.1994), *cert. denied,* 513 U.S. 1163, 115 S.Ct. 1130, 130 L.Ed.2d 1091 (1995). As determined in Proposition I, the evidence was sufficient to support the jury's verdict, notwithstanding defense counsel's misstatements. Thus, we find no merit. Having found no error in any of these claims, we find Appellant was not deprived of his constitutional right to effective assistance of trial counsel.

¶ 63 In subproposition F, Appellant asks this Court to grant him a Rule 3.11 [9] evidentiary hearing on Sixth Amendment claims supported by matters outside the trial record, specifically that defense counsel failed to present relevant mitigating evidence. This rule allows an appellant to request an evidentiary hearing when it is alleged on appeal that trial counsel was ineffective for failing to "utilize available evidence which could have been made available during the course of trial. . . ." Once an application has been properly submitted along with supporting affidavits, this Court reviews the application to see if it contains "sufficient evidence to show this Court by clear and convincing evidence there is a strong possibility trial counsel was ineffective for failing to utilize or identify the complained-of evidence." Rule 3.11B(3)(b)(i), *Rules of the Court of Criminal Appeals,* 22 O.S.Supp.1996, Ch. 18, App.

¶ 64 In support of his application for a hearing, Appellant offers the affidavit of Dr. Ray Hand, licensed health service psychologist, who conducted a full evaluation of Appellant and rendered his conclusions to rebut the State's allegations of the continuing threat circumstance. Upon review of the application and the supporting affidavit, we find Appellant has shown this Court that trial counsel could well have utilized this evidence and that it may have been prudent for him to do so. However, Appellant has not shown by clear and convincing evidence a strong possibility that defense counsel was ineffective for failing to utilize or identify this evidence.

Accordingly, we decline to grant Appellant's application for an evidentiary hearing.

## CUMULATIVE ERROR

¶ 65 Last, Appellant argues that an accumulation of errors has deprived him of a fair trial. This Court has consistently held that if individual assertions of error are rejected, then the propositions when considered collectively will not yield a different result. *Ballou v. State,* 694 P.2d 949, 952 (Okl.Cr.1985). This proposition of error is also denied.

## MANDATORY SENTENCE REVIEW

¶ 66 Finally, pursuant to 21 O.S.1991, § 701.13(C), this Court is charged to determine: (1) whether the sentence of death was imposed under the influence of passion, prejudice or any other arbitrary factor; (2) whether the evidence supports the jury's finding of the statutory aggravating circumstance found: the existence of a probability that Appellant would commit criminal acts of violence that would constitute a continuing threat to society. There is ample and substantial evidence to support the jury's finding. See proposition twelve, above.

¶ 67 In mitigation, Appellant presented testimony from family members, his Pastor and his Pastor's wife and offered: [10]

1. The defendant is a good father.

2. The defendant loved his son and went to jail in order to see his son.

3. The defendant and Sherry Goodlow had a stormy relationship aggravated by mutual tempers, jealousies and random acts of aggression.

4. The defendant is well educated and may provide valuable assistance to others and encourage educational pursuits.

5. Throughout their eight year relationship both the defendant and Sherry Goodlow had periods of mutual happiness and love.

6. The defendant has been a loving and supportive brother and son to his family.

---

9. Rule 3.11B (3)(b), *Rules of the Court of Criminal Appeals,* 22 O.S.Supp.1996, Ch. 18, App.

10. Second Stage Jury Instruction No. 8.

7. The defendant has no prior history of aggression, other than the incidents related to his relationship with decedent.

8. The defendant has a personal relationship with God and can share his faith and prayers with others.

¶ 68 Upon carefully considering and reviewing the evidence which supports the aggravating circumstance, as well as the evidence which may be considered mitigating, we find the sentence of death is factually substantiated and appropriate. Furthermore, we find that the sentence of death was not imposed under the influence of passion, prejudice or any other arbitrary factor. Finally, no error exists warranting reversal or modification. The judgment and sentence is **AFFIRMED.**

## DECISION

¶ 69 The Judgment and Sentence of the trial court is **AFFIRMED.**

STRUBHAR, V.P.J., and LUMPKIN, J., concur.

CHAPEL, P.J., and LANE, J., concur in results.

