2000 OK CR 4

**Timothy Shaun STEMPLE, Appellant.**

**v.**

**STATE of Oklahoma, Appellee.**

**No. F–98–201.**

Court of Criminal Appeals of Oklahoma.

Jan. 20, 2000.

Rehearing Denied March 2, 2000.

W. Creekmore Wallace, II, Sapula, Johnie O'Neal, Tulsa, for Defendant.

T. Brett Swab, Mark L. Collier, Assistant District Attorneys, Tulsa, for the State.

Gloyd L. McCoy, Coyle & McCoy, Oklahoma City, for Appellant.

W.A. Drew Edmondson, Attorney General of Oklahoma, William L. Humes, Assistant Attorney General, Oklahoma City, for Appellee.

## O P I N I O N

LILE, Judge:

¶1 Timothy Shaun Stemple was convicted by jury of first degree malic murder, 21 O.S.1991, § 701.7 (count one), conspiracy to commit first degree murder, 21 O.S.1991, § 421 (count two), and attempted first degree murder,21 O.S.1991, § 42 (count three), in Tulsa County District Court, Case Number CF–96–5169, the Honorable B.R. Beasley, Associate District Judge, presiding. After the sentencing stage, the jury found the existence of two aggravating circumstances: "the person committed the murder for remuneration or the promise of remuneration, or the person employed another to commit the murder for remuneration or promise of remuneration;" and "the murder was especially heinous, atrocious or cruel." 21 O.S.1991, § 701.12(3) & (4). The jury set punishment at death on count one, ten years on count two and twenty-two years on count three.

## FACTS

¶2 Stemple concocted a plan to terminate the life of his wife, Trisha Stemple, and to collect her life insurance proceeds. Stemple was having an extra-marital affair with Dani Wood. Dani Wood had a sixteen year old cousin, Terry Hunt. According to Hunt, Stemple offered him $25,000 to $50,000 to help kill Trisha (if they collected the insurance money).

¶3 Hunt recruited another person, Nathanial Helm to assist in the plan. Helm and Hunt went to Wal–Mart where they purchased a baseball bat and plastic wrap. The plastic wrap was wrapped around the bat to keep the bat from getting bloody.

¶4 On October 10, 1996, Hunt and Helm went to the designated location on highway 75 and waited for Stemple and his wife to arrive. A while later Stemple drove up and told Helm and Hunt that Trisha was ill and he could not get her to accompany him.

¶5 Two weeks later, Stemple arranged for Hunt to drive Stemple's pickup to a particular location on highway 75 and leave the hood up. Stemple and Trisha arrived in their black Nissan Maxima. Stemple began working on the truck and Trisha stood next to the truck. Hunt came up behind Trisha and hit her in the head with the bat. The blow did not render Trisha unconscious, so Stemple took the bat and hit her several more times.

¶6 Stemple and Hunt then placed Trisha's head in front of the front tire of the pickup and attempted to run over her head, however, the tire would not roll over Trisha's head so her head was pushed along the pavement. After this, Trisha tried to get up. Stemple grabbed the bat and hit her several more times. The pair then placed Trisha's body under the truck and drove over her chest. After this Trisha rose up on her elbows, so Stemple hit her again several times with the bat.

¶7 Stemple then went back to the black Nissan and drilled a hole in the front tire to make it look as if Trisha's car had a flat. One expert testified that the hole in the tire had spiral striations consistent with drilling. Stemple and Hunt left in the pickup, but decided to turn around to make sure Trisha was dead. When they got back to the spot where they left Trisha, they noticed that she had crawled into the grass beside the road. Stemple then sped up and ran over Trisha as she lay in the grass.

¶8 Trisha's body was found later that morning, after Stemple called reporting that she was missing. The autopsy evaluation revealed that Trisha had fractures to her

arm, ribs, pelvis, vertebrae and skull. The medical examiner concluded that Trisha died from blunt force trauma to the head.

¶ 9 While in the Tulsa County jail awaiting trial, Stemple made numerous notes including confessions, lists of witnesses, etc. Inmates testified that Stemple tried to get them to arrange the death of several witnesses. The inmates also testified that Stemple gave them a copy of his confession. Included in these writings were sample letters for witnesses Terry Hunt and Dani Wood, detailing their involvement and exculpating him from the crime. Hunt and Wood were to be coerced into rewriting and signing the letters by persons hired by the other inmates.

¶ 10 Stemple claimed that he was at home when Trisha left during the middle of the night. Stemple testified that he believed that Wood was responsible for the murder of Trisha.

## JURY SELECTION ISSUES

■ ¶ 11 Stemple complains, in proposition four, that he was deprived of his right to be present at every critical stage of the proceeding by being absent from an in camera hearing regarding comments made by a spectator to venire member Heffernan. Heffernan indicated, during voir dire, that a spectator had stated an opinion about the case to him. Heffernan indicated that the statement did not taint him in any way. Heffernan was not removed by either side, nor by the court.

¶ 12 The next day an in camera hearing was held. The spectator, Marita Ries said that she was sitting next to Heffernan and possibly said that "this is a terrible case." Ries was admonished to keep her opinions to herself. Stemple was not present at this hearing and his attorney advised the trial court that he waived his client's right to be present.

¶ 13 First, we note that this in *camera* hearing was not part of the voir dire and Ries was not a part of the jury pool. Therefore, cases which discuss the absence of a defendant from voir dire are distinguishable. See *Darks v. State*, 1998 OK CR 15, ¶ 35, 954

P.2d 152, 162 ("There is no way to assess the extent of prejudice, if any, a defendant might suffer by not being able to advise his attorney during jury selection.")

¶ 14 Stemple was present during the voir dire of Heffernan and he was aware that a spectator had stated an opinion to Heffernan. Ries' admission during the *in camera* hearing did not add anything to the voir dire. In actuality, her statement did not indicate any bias whatsoever. Regardless, of the guilt or innocence of Stemple, all present could agree that this was a terrible case.

¶ 15 We find that the absence of Stemple during this *in camera* hearing was not prejudicial to his case. It certainly was not an instance where a fair and just trial was thwarted by his absence. *Kentucky v. Stincer*, 482 U.S. 730, 745, 107 S.Ct. 2658, 2667, 96 L.Ed.2d 631 (1987); *Gregg v. State*, 1992 OK CR 82, ¶ 23, 844 P.2d 867, 876. Therefore, there was no error here.

## FIRST STAGE ISSUES

¶ 16 Stemple argues in proposition two that the State failed to comply with basic rules of discovery when prosecutors failed to inform him that Terry Hunt had changed his story. The Oklahoma Discovery Code requires that the State disclose, upon request of the defense, "the names ... of witnesses which the state intends to call at trial, together with their relevant, written or recorded statement, if any, or if none, significant summaries of any oral statement ...;" 22 O.S.Supp.1998, § 2002(A)(1)(a), and "any written or recorded statements and the substance of any oral statements made by ... a codefendant." 22 O.S.Supp.1998, § 2002(A)(1)(c). The Discovery Code also requires that the State provide exculpatory evidence, regardless of a request by the defense. 22 O.S.Supp.1998, § 2002(A)(2). The State is under a continuing duty to disclose discoverable material. 22 O.S.Supp. 1998,§ 2002(C). Stemple filed a motion for discovery; therefore, he triggered the requirements of Sections 2002(A) and 2002(C).

¶ 17 The State disclosed recorded statements made by Hunt, and Hunt testified at preliminary hearing. Hunt's preliminary

hearing testimony was not interrupted or cut short by the magistrate. In fact, trial counsel admitted that he thoroughly cross-examined Hunt at preliminary hearing. Stemple argues that Hunt materially changed his testimony at trial, and because of the change, the State had a duty to inform him about changes of which the State had knowledge prior to trial.

¶ 18 At trial, Hunt testified that Stemple's first plan involved a kill switch on the Nissan Maxima. Stemple and his wife would drive to a location where Stemple would kill the car. Stemple and his wife would get out and Hunt would come out of hiding and hit Trisha with the baseball bat. Stemple objected to this testimony, stating that this is the first time he had heard these details. The prosecutor admitted that, before testifying, Hunt indicated that this conversation had taken place. The trial court sustained Stemple's objection and the jury was admonished to disregard the testimony. Regarding this testimony, we find that any perceived error was cured by the admonishment to the jury. *Patton v. State*, 1998 OK CR 66, ¶ 68, 973 P.2d 270, 292–93, *cert. denied*, —— U.S. ——, 120 S.Ct. 347, 145 L.Ed.2d 271 (a trial court's admonishment usually cures any error).

¶ 19 Later, Hunt testified that he drove by Nathaniel Helm's residence before driving out to the location of the murder. Again, Stemple objected stating that this was the first time he had heard this story. Obviously, the State knew about this information because they talked about it in opening statement. The State argued that this testimony was a minor deviation from the discovery materials and preliminary hearing testimony. Stemple also objected to Hunt's testimony wherein he said that he acted like the assault was a "car jacking" and told them to "get down." The trial court overruled the objections.

¶ 20 Hunt's own desire or need to make it sound like he was a "car jacker" did nothing to change the substance of his testimony against Stemple. There is no evidence that the State knew that Hunt was going to testify that he was acting like it was a car jacking. Hunt obviously was trying to make

Trisha believe that her husband was not involved in the attack.

¶ 21 Obviously, the State did not turn over the substance of all of the oral statements made by Hunt leading up to trial. The State defended themselves by saying that Hunt was made available to the defense for questioning. On appeal, the State argues that the change in testimony did not amount to a materially significant change and that Stemple was not prejudiced by the more detailed testimony at trial.

¶ 22 We find that the failure to disclose this information was not fatal to this case. First, the additional information did not substantially change the evidence against Stemple. Whether or not Hunt went by Helm's residence before going to the scene of the crime is inconsequential. Therefore, the trial court did not abuse its discretion in allowing the evidence to be introduced.

¶ 23 Hunt's testimony regarding the desire to make the assault look like a "car jacking" was not a substantial change in his earlier testimony. At preliminary hearing Hunt stated that the plan was, first, to make it look like a robbery, and later, Stemple decided to make it look like a hit and run.

¶ 24 Stemple also complains about Hunt's testimony when he states that he tried to run over her chest. The discovery materials apparently stated that "they tried to run over her." The trial court decided that this was substantially the same. Stemple lastly complains about testimony concerning the disposal of the keys of the Maxima. During preliminary hearing, Hunt did not mention any of these details. These were not changes in testimony sufficient to trigger the State's continuing duty to disclose (if the State had prior knowledge of the change). This was inconsequential testimony and did not constitute the substance of the case.

¶ 25 In this case there was no complete failure to disclose evidence as there was in *Skelly v. State*, 1994 OK CR 55, 880 P.2d 401. In the present case, the prosecutor did turn over all written and recorded statements. But the State did not disclose the substance of Hunt's oral statements made just before testifying. Stemple cites the Florida case of

*Evans v. State,* 721 So.2d 1208 (Fla.App. 1998) for support of this proposition. However in *Evans* the witness's testimony changed from "I didn't see anything" to "I saw the defendant shoot the victim." Such a material change in testimony did not occur in this case.

■ ¶ 26 The Supreme Court of Florida has stated that,

"When testimonial discrepancies appear, the witness' trial and deposition testimony can be laid side-by-side for the jury to consider. This would serve to discredit the witness and should be favorable to the defense. Therefore, unlike failure to name a witness, changed testimony does not rise to the level of a discovery violation...."

*Bush v. State,* 461 So.2d 936, 938 (Fla.1984), *cert. denied,* 475 U.S. 1031, 106 S.Ct. 1237, 89 L.Ed.2d 345 (1986). The same can be said of the case at bar. Stemple had the opportunity and did question Hunt regarding the discrepancies in his trial testimony versus his preliminary hearing testimony and his recorded statements. These discrepancies served to discredit Hunt and made him somewhat less believable.

■ ¶ 27 The State is not required to give a script of its case in chief. However, the State is under a continuing duty to disclose additional evidence or material discovered prior to or during trial. 22 O.S.Supp. 1998,§ 2002(C). Such failure to disclose may be error when this evidence is material, would change the theory of the case or would cause the defendant to change his strategy. However, in this case, the State did not violate the letter or the spirit of the Discovery Code by failing to inform Stemple of the discrepancies in Hunt's testimony.

■ ¶ 28 Also in this proposition, Stemple argues that the State attempted to introduce testimony from James Johnson that was not provided in discovery. Stemple objected to the testimony at trial. His objections were sustained and the evidence was excluded. The State provided a written statement by Johnson. That is all that is required in the Oklahoma Discovery Code. The State is required to disclose a witness's "relevant, written or recorded statements, if

any, or if none, significant summaries of any oral statement,...." 22 O.S.Supp.1998, § 2002(A)(1)(a). There was no violation of the discovery code here.

■ ¶ 29 Stemple, lastly complains about the testimony of William Compion regarding insurance scams. He claims he was not advised that Compion would testify about these alleged scams. Stemple's objection to William Compion's testimony was sustained. Stemple did not ask that the jury be admonished. Therefore, reversal is not required. *Shepard v. State,* 1988 OK CR 97, ¶ 7, 756 P.2d 597, 600 (where objection was sustained and no request was made to have the jury admonished and no motion for a mistrial or other relief was made, reversal was not required).

¶ 30 In proposition three, Stemple complains that the introduction of a videotape, State's exhibit number 87, showing that he exercised his right to remain silent and his right to consult an attorney violated his due process rights. Trial counsel never filed a written motion to exclude the tape or to excise any portion of the tape. At trial the trial court asked defense counsel, "Do you want an exception?," and counsel replied in the affirmative. The trial court later stated that "State's exhibit 87 was admitted and an exception has been allowed the defendant."

¶ 31 "Failure to object with specificity to errors alleged to have occurred at trial, thus giving the trial court an opportunity to cure the error during the course of trial, waives that error for appellate review unless the error constitutes fundamental error, i.e. plain error...." *Simpson v. State,* 1994 OK CR 40, ¶ 2, 876 P.2d 690, 693; *See* 12 O.S.1991, § 2104(A)(1)("Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of a party is affected, and...a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context...."); *See also Dunham v. State,* 1988 OK CR 211, ¶¶ 10–11, 762 P.2d 969, 972 (error not preserved by general objection).

¶ 32 In *Wolfe v. State,* 1987 OK CR 80, ¶ 4, 736 P.2d 546, 547, this Court held that

trial counsel's general objection "for purposes of appeal" were insufficient to preserve error in the introduction of tape recorded statements. On appeal the appellant claimed that "the statement was made during plea negotiations with the prosecutor, and was coerced by law enforcement officials." This Court reasoned that "12 O.S.1981, § 2104(A)(1) requires that objections to the admission of evidence must be both specific and timely, in order for merits of the objection to be considered on appeal." *Id.* In *Mornes v. State*, 1988 OK CR 78, ¶ 12, 755 P.2d 91, 95, this Court held that a general objection is insufficient when portions of evidence are admissible. In *Mornes*, the appellant made a general objection to the introduction of a pen pack. He failed to request that the trial court excise improper portions of the pen pack.

■ ¶ 33 The case at bar is similar to both *Wolfe* and *Mornes*. Portions of this tape were admissible, but the introduction of some portion of the tape could be construed as error. Stemple's general objection to this tape was not sufficient because portions of the tape were admissible and it is not clear upon what grounds Stemple based his objection. Because trial counsel did not make a more specific objection and because he did not request the redaction of objectionable material, we will review for plain error only.

¶ 34 On the video tape Stemple begins by saying, "I feel as though I should have an attorney ... because how ugly this looks on me." Stemple says that he fears that the police are going to try and pin the murder on him because he had plenty of motive; the large insurance policy and the extramarital affair. He also explains that he knows that a red pickup was seen in the area of the crime and he recently owned a red pickup. He knows people saw him out there because he was out there in the area that night. Stemple states that he wants to help but he does not want to "screw" himself. He says that he will be selective in the questions that he answers.

¶ 35 The officers assured Stemple that they were not going to arrest him, but they read the *Miranda*[1] warning to him anyway. They asked him if he wanted to answer questions or if he wanted an attorney and Stemple said, "I better get an attorney." He says again that he wants to help and asks if he can make an appointment for a later time. The detectives tell him that will be up to him and his attorney. They tell him "you know what happened." And Stemple replies, "I do." Then Stemple says "I'm gonna get an attorney." At that time the interview ended. All of this was on the video shown to the jury.

■ ¶ 36 Stemple claims in this appeal that he requested counsel at the beginning of the tape, therefore, this video taped statements was admitted in violation of his right to counsel. In *Davis v. United States*, 512 U.S. 452, 459, 114 S.Ct. 2350, 2355, 129 L.Ed.2d 362 (1994), the Court held that if a suspect makes a request for counsel that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect might be invoking his right to counsel, Supreme Court precedents do not require that questioning cease. The Court stated that if it were to require questioning to cease if a suspect makes a statement that might be a request for an attorney, the clarity and ease of application necessary for effective law enforcement would be lost. *Id.* at 461, 114 S.Ct. at 2356. The portion of the tape, before Stemple was read the *Miranda* warning, was admissible. Stemple did not unequivocally invoke his rights. Therefore, questioning did not need to cease.

■ ¶ 37 Stemple was still not clear that he wanted an attorney when he commented about counsel right after the reading of *Miranda*. He continued to say I want to talk, "can I make an appointment for later." Even if this was an unequivocal request for counsel, the conversation introduced after this did not rise to the level of plain error. "Plain error denies the accused a constitutional or statutory right, and goes to the foundation of the case." *McGregor v. State*, 1994 OK CR 71, ¶ 34, 885 P.2d 1366, 1383,

---

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)

*cert. denied*, 516 U.S. 827, 116 S.Ct. 95, 133 L.Ed.2d 50 (1995).

¶ 38   Stemple's statement indicating that he knew what happened was incriminating. An argument can be made that the comment was made after an unequivocal request for counsel in response to a comment by police that they should know was reasonably likely to elicit an incriminating response. *See Rhode Island v. Innis*, 446 U.S. 291, 299–300, 100 S.Ct. 1682, 1688–89, 64 L.Ed.2d 297 (1980). Stemple explained on the tape why he was reluctant to talk to officers. He was looking out for his best interests and the interests of his children and he didn't want to get himself into trouble. Even though there may have been a violation of Stemple's Fifth Amendment right, the introduction of the comment did not go to the foundation of the case.

¶ 39   Stemple complains that the prosecutor used his silence and request for counsel during this interview against him. In *Jenkins v. Anderson*, 447 U.S. 231, 239–40, 100 S.Ct. 2124, 2129–30, 65 L.Ed.2d 86 (1980), the Supreme Court held that once a defendant is informed that he has a right to remain silent, any attempt to impeach the defendant by his subsequent silence and invocation of the right to counsel is error. The Court reasoned that once a person is given the *Miranda* warnings, he is informed, "at least implicitly, that his subsequent decision to remain silent cannot be used against him." *Jenkins*, 447 U.S. at 240, 100 S.Ct. at 2130. Further, due process requires that the prosecution not be allowed to call attention a defendant's silence and insist that, because he chose not to talk, when he has been told that he has a right to remain silent, an unfavorable inference might be drawn regarding the credibility of his trial testimony. *Id.*

¶ 40   The Fifth Amendment right to counsel is a prophylactic right designed to protect a person from the compelling pressures of custodial interrogation. *McNeil v. Wisconsin*, 501 U.S. 171, 176, 111 S.Ct. 2204, 2208, 115 L.Ed.2d 158 (1991); *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The purpose of the Fifth Amendment right to counsel is to protect "the suspect's 'desire to deal with the

police only through counsel,'" *McNeil*, 501 U.S. at 178, 111 S.Ct. at 2209, *quoting, Edwards v. Arizona*, 451 U.S. 477, 484, 101 S.Ct. 1880, 1884, 68 L.Ed.2d 378 (1981).

¶ 41   In *White v. State*, 1995 OK CR 15, ¶ 22, 900 P.2d 982, 992, this Court stated,

> Any comment on a defendant's exercise of his right to remain silent is error. However, error may be harmless where there is overwhelming evidence of guilt and the defendant is not prejudiced by the error. Error may also be "cured" where the trial court sustains the defendant's objection and admonishes the jury.[footnotes omitted].

¶ 42   The prosecutor in this case insisted on using Stemple's desire to remain silent as a means of convincing the jury that he was guilty. The prosecutor first questioned Stemple's failure to call the police. However, there was no objection to this questioning. Therefore, we will review for plain error only. Stemple also complains about the prosecutor's mentioning of the videotape during closing. The prosecutor's comments said nothing about Stemple's right to remain silent. He merely commented on the portion of the tape which was admissible.

¶ 43   This Court held in *Dungan v. State*, 1982 OK CR 152, ¶ 6, 651 P.2d 1064, 1065, that comments on a defendant's exercise of his right to remain silent after he has received his *Miranda* warnings may be prejudicial to the extent that they constitute fundamental error. However, whether these comments rise to the level of fundamental error depends on the particular facts and circumstances of each case. Based on the fact that Stemple admitted to the murder in notes he wrote in jail and the overwhelming evidence establishing guilt, we find that the questioning and comments by the prosecutor did not rise to the level of plain error.

¶ 44   In propositions six and seven, Stemple complains about other comments made by the prosecutor. At one point, the prosecutor asked Stemple if he left Oregon because he was "run out of town because you were abusive with children." The defendant's objection was sustained and the jury was

admonished to disregard the comment. In viewing the entire record in this case, we believe that the admonishment to the jury was sufficient to cure the error committed by the prosecutor. *Patton*, 1998 OK CR 66, ¶ 68, 973 P.2d at 292–93.

¶ 45 Stemple also complains that the prosecutor improperly vouched for the testimony of Terry Hunt and Rahmon Macon. At no time did defense counsel object to the comments of which Stemple now complains. Therefore, Stemple has waived review for all but plain error. We find that none of the comments rise to the level of plain error.

¶ 46 Stemple claims that the prosecutor cast aspersions on defense counsel. No objections were made to these comments; thus, we can review for plain error only. There was no plain error here. Next, Stemple complains that the prosecutor accused Stemple of fabricating a defense and lying. Of the comments made, defense counsel only objected to one of them. This objection was sustained and the jury was admonished to disregard the comment. The admonishment cured the error. The other comments did not rise to the level of plain error.

¶ 47 Stemple complains about the prosecutor's demonstration with the baseball bat during closing argument. The record does not reflect how the prosecutor was handling the bat during closing argument. Stemple tries to equate the prosecutor's action to the stabbing of a picture of the victim. *See Brewer v. State*, 1982 OK CR 128, ¶ 5, 650 P.2d 54, 57, *cert. denied*, 459 U.S. 1150, 103 S.Ct. 794, 74 L.Ed.2d 999 (1983). However the record does not support such analogy. We find no error here.

¶ 48 Stemple complains about cross examination regarding the failure to call witnesses. Stemple's objection at trial was sustained and the jury was admonished. The trial court's actions cured any error. Stemple complains about the prosecutor asking Stemple if the other witnesses are lying. Of the seven incidents cited by Stemple, only one question drew an objection. This type of

cross examination did not amount to error. Asking the defendant whether other witnesses were lying was a method used to impeach the defendant's testimony. *Ross v. State*, 1978 OK CR 136, ¶ 7, 588 P.2d 1269, 1270 ("While this technique is not desirable, we find no error in his cross-examination.").

¶ 49 Stemple complains about the prosecutor's improper cross examination of witness Tyler Ferrell regarding pending charges. An objection was sustained and the jury was admonished to disregard. The admonition cured any error.

¶ 50 In propositions ten and eleven, Stemple argues that the introduction of certain evidence was error. Stemple first argues that the evidence of his past insurance claims was inadmissible. The evidence was relevant to show motive and knowledge. First, the insurance claims were relevant to show that Stemple was familiar with the insurance claim process, whether or not the claims were valid. Second, the insurance claims, which may have been dubious, were relevant to corroborate the testimony of jail inmates, who testified that Stemple told them about past insurance scams.

¶ 51 Stemple makes the claim that the papers he prepared while in the county jail were prepared for his attorney in preparation for trial. Stemple cites no authority for this proposition. In fact the witnesses called during the *Jackson v. Denno*[2] hearing stated that Stemple willingly shared this information with them. Therefore, he waived any alleged privilege. We find that the trial court did not abuse its discretion in allowing the introduction of this evidence during trial. *Dunham v. State*, 1988 OK CR 211, ¶ 10, 762 P.2d at 972.

¶ 52 In proposition eight, Stemple claims that there was insufficient evidence to support the attempted murder charge. We agree. The State alleged that the attempted murder took place on October 10, 1996, the night Trisha was too ill to accompany Stemple to the planned murder site.

¶ 53 In order to be guilty of an attempted crime three elements must be met:

**2.** 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

"the intent to commit the crime; the performance of some act toward its commission (commonly called the commission of some overt act); and the failure to complete or consummate the crime. It is equally settled that the overt act must be more than mere preparation or planning the crime.... "

"It must be such act or acts as will apparently result, in the usual and natural course of events, if not hindered by extraneous causes, in the commission of the crime itself."

*Rosteck v. State*, 1988 OK CR 11, 749 P.2d 556, 559, quoting, *Dunbar v. State*, 75 Okl.Cr. 275, 131 P.2d 116, 122 (1942); *See* 21 O.S. 1991, § 44 (definition of attempt).

¶ 54 What we have in this case is mere preparation for the commission of the offense. Hunt and Helm were stationed at the planned location in preparation to attack; however, there was no overt act toward the commission of murder. Therefore, Stemple's conviction for attempted murder must be reversed and remanded with instructions to dismiss.

¶ 55 In a related claim, proposition nine, Stemple claims that the convictions for attempted murder and conspiracy to commit murder violate the principles of double jeopardy. Because we have decided that the attempted murder conviction must be dismissed, this proposition is moot.

¶ 56 In proposition five, Stemple raises claims of ineffective assistance of counsel occurring during the first stage of trial. In order to show ineffective assistance of counsel, Appellant must meet the two-pronged test set out in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Lewis v. State*, 1998 OK CR 24, ¶ 48, 970 P.2d 1158, 1173, *cert. denied*, — U.S. —, 120 S.Ct. 218, 145 L.Ed.2d 183. First Appellant must show that trial counsel's performance was deficient (trial counsel was not functioning as the counsel guaranteed by the Sixth Amendment). Second, he must show he was prejudiced by the deficient performance (counsel's errors deprived him of a fair trial with a reliable outcome). *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064.

¶ 57 We are to accord a strong presumption that counsel was at least constitutionally competent. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065.We will judge counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct, and ask if the conduct was professionally unreasonable. *Hooper v. State*, 1997 OK CR 64, ¶ 57, 947 P.2d 1090, 1111, *cert. denied*, 524 U.S. 943, 118 S.Ct. 2353, 141 L.Ed.2d 722 (1998).

¶ 58 An error must be so egregious that it indicates deficient performance by counsel, falling outside the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 687–89, 104 S.Ct. at 2064–65. Many significant errors will not meet this highly demanding standard. *Kimmelman v. Morrison*, 477 U.S. 365, 381–82, 106 S.Ct. 2574, 2586, 91 L.Ed.2d 305 (1986). Those errors that require reversal do so because they reflect performance by counsel that has "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686, 104 S.Ct. at 2064.

¶ 59 Stemple claims that his trial counsel was ineffective for failing to object to the cross-examination of Stemple and the closing argument by the prosecutor regarding Stemple's assertion of his right to counsel. We believe that the failure to object to the cross-examination did not deprive Stemple of a fair trial. The failure to object to the closing argument did not rise to the level of deficient performance, as the comments were properly based on admissible evidence.

¶ 60 Stemple claims that counsel was ineffective for waiting to give opening statement at the start of his case in chief. This choice is a legitimate strategy. Counsel cannot be faulted for waiting to make an opening statement at the start of his case in chief. This strategic choice does not rise to the level of deficient performance. *Hammon v. State*, 1995 OK CR 33, ¶ 107, 898 P.2d 1287, 1310.

¶ 61 Stemple also claims that counsel was ineffective for failing to present expert testimony regarding the inconsistencies between the crime scene and Hunt's testimony. Stemple does not show what the inconsistencies were, how they are relevant to his trial or what the expert testimony would have been. Therefore, we cannot review this claim.

## SECOND STAGE ISSUES

¶ 62 Stemple complains that improper remarks by the prosecutor during the sentencing stage violated his due process rights and denied him a fair sentencing proceeding. All of the comments Stemple now complains about were met with contemporaneous objections and the jury was admonished to disregard the comments. We find that the admonitions by the trial court were sufficient to cure any conceivable error. *Patton*, 1998 OK CR 66, ¶ 68, 973 P.2d at 292–93.

¶ 63 Stemple alleges, in proposition thirteen, that the evidence was insufficient to support the jury's verdict regarding the aggravating circumstances. Stemple also argues that the mitigating evidence outweighed the aggravating circumstances.

¶ 64 The jury found the existence of two aggravating circumstances: "the person committed the murder for remuneration or the promise of remuneration, or the person employed another to commit the murder for remuneration or promise of remuneration," 21 O.S.1991, § 701.12(3); and "the murder was especially heinous, atrocious or cruel." 21 O.S.1991, § 701.12(4). On appeal, the standard of review is "whether there was any competent evidence to support the State's charge that the aggravating circumstance existed." *Bryson v. State*, 1994 OK CR 32, ¶ 52, 876 P.2d 240, 259, *cert. denied*, 513 U.S. 1090, 115 S.Ct. 752, 130 L.Ed.2d 651 (1995).

¶ 65 Stemple claims that the only evidence of a murder for remuneration or employing another to commit the murder for remuneration is the uncorroborated testimony of Hunt. However, Hunt's testimony was corroborated. Stemple's own written words corroborated Hunt's testimony. Fur-

ther, circumstantial evidence can be adequate to corroborate the accomplice's testimony. *Pierce v. State*, 1982 OK CR 149, ¶ 6, 651 P.2d 707, 709. The existence of a large insurance policy, the fact that Hunt admitted his involvement, and the fact that the murder was set up to look like an accident all corroborate Hunt's testimony that the murder was done for remuneration.

¶ 66 The other aggravating circumstance, the murder was especially heinous, atrocious or cruel, is also supported by the evidence. This aggravating circumstance must be supported by evidence of conscious serious physical abuse or torture prior to death. This may include the infliction of either great physical anguish or extreme mental cruelty. *Cheney v. State*, 1995 OK CR 72, ¶ 15, 909 P.2d 74, 80.

¶ 67 The evidence showed that Trisha Stemple was struck by a baseball bat and run over by a pickup. She tried to get up, so she was struck again with the baseball bat. Later, she crawled from the road, onto the grass, where she was struck by the pickup. The fact that Trisha Stemple was conscious during the attack is shown by her ability to move herself from the pavement on to the grass on the side of the road after being beaten by a baseball bat and run over by the pickup. The type of injuries sustained and the description of the attack show that Trisha Stemple suffered great physical pain before she died. This evidence is sufficient.

¶ 68 The mitigating evidence included testimony from Stemple's son who asked that his father's life be spared. The mitigating factors were outlined in an instruction to the jury. As well as Stemple's relationship with his children and extended family, the mitigating factors included his lack of a prior criminal history; his high probability of rehabilitation; his religious beliefs; his past history of working with and coaching children in soccer; his education, young age and a listing of positive things he has done in his life.

¶ 69 We believe that the jury properly weighed all of the mitigating evidence against the aggravating circumstances. We will not disturb the jury's findings that the

aggravating circumstances outweighed the mitigating factors.

## HARMLESS ERROR AND CUMULATIVE ERROR REVIEW

¶ 70   Stemple argues in his initial proposition of error that the errors in this case were too egregious to be called harmless. Stemple claims that his credibility was on the line in this case. He claims that the errors occurring at trial damaged his credibility in such a way as to deprive him of a fair trial.

¶ 71   This proposition rests on the premises that the key witnesses against him were all yoked with the presumption of not being credible. The jurors were instructed that the codefendant's testimony and the "jail house snitches' testimony" were all to be judged more critically.

¶ 72   Stemple claims that he should not have been yoked with this presumption. He claims that the errors that occurred at trial improperly created this yoke for him to bear. A yoke that should not have been placed upon him in front of the jury. He claims that this yoke created, in the jury's mind, an improper and unconstitutional burden on his credibility which affected the outcome of the case. Therefore, Stemple claims, the errors cannot be called harmless.

¶ 73   The United States Supreme Court has held that only errors which create a situation where "a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence . . . ." can escape harmless error review. *Rose v. Clark*, 478 U.S. 570, 577–78, 106 S.Ct. 3101, 3106, 92 L.Ed.2d 460 (1986). Even Constitutional errors are subject to the Harmless Error doctrine. *Id.* at 576, 106 S.Ct. at 3105. The United States Supreme Court has repeatedly stated, "the Constitution entitles a criminal defendant to a fair trial, not a perfect one." *Id.* at 579, 106 S.Ct. at 3105; *See Lutwak v. United States*, 344 U.S. 604, 620, 73 S.Ct. 481, 490, 97 L.Ed. 593 (1953). "[I]f the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other errors that may have occurred are subject to harmless-error

analysis." *Rose v. Clark*, 478 U.S. at 579, 106 S.Ct. at 3106.

¶ 74   Stemple does not claim that the errors in this case are not subject to harmless-error analysis. He merely claims that the errors, placed in the context of this case, support the notion that the errors were not harmless and justify a reversal of his conviction and sentence.

¶ 75   We disagree with this notion. The trial in this case was not perfect, however, viewing the errors in the context of this case, the errors did not deprive Stemple of a fair trial. Many of the errors of which Stemple complains in his brief, were not properly preserved at trial. We found that these errors did not rise to the level of plain error because the error did not go to the foundation of the case.

¶ 76   Of the errors properly preserved at trial, we found numerous errors which were cured by the trial court by admonition to the jury. We find that these errors, viewed cumulatively, do not warrant reversal. We found numerous allegations that did not rise to the level of plain error. Even looking at these allegations in a cumulative fashion, we find that they do not rise to the level of plain error. Finally, our analysis of all of the errors combined do not rise to the level of reversible error in this case.

## MANDATORY SENTENCE REVIEW

■   ¶ 77   Title 21 O.S.1991, § 701.13, requires this Court to determine "[w]hether the sentence of death was imposed under the influence of passion, prejudice or any other arbitrary factor; and whether the evidence supports the jury's or judge's finding of statutory aggravating circumstance." Sufficient evidence existed to support the finding of the two statutory aggravating circumstances, as discussed in proposition thirteen. After reviewing the entire record in this case, we find that the sentence of death was not imposed because of any arbitrary factor, passion or prejudice. The facts of this case simply warranted the penalty of death.

¶ 78   We have found that Stemple's conviction for attempted murder must be reversed and remanded with instructions to

dismiss. We find no error warranting reversal of the convictions or sentences for the remaining counts; therefore, the Judgment and Sentence on the remaining counts is AFFIRMED.

STRUBHAR, P.J., concurs (Count III), concurs in result (Counts I & II).

LUMPKIN, V.P.J., and JOHNSON, J., concur.

CHAPEL, J., concurs in part/dissents in part.

