2007 OK CR 24

**Elwood K. JACKSON, Jr., Appellant**

v.

**STATE of Oklahoma, Appellee.**

**No. D–2004–1173.**

Court of Criminal Appeals of Oklahoma.

June 25, 2007.

Robert Schulte, District Attorney, Lawton, OK, attorney for the State at trial.

Diane Box, Joe P. Robertson, Janet Chesley, Asst. Public Defenders, Oklahoma Indigent Defense, Norman, OK, attorneys for the defendant at trial.

Robert W. Jackson, Steven M. Presson, Norman, OK, attorneys for appellant on appeal.

W.A. Drew Edmondson, Attorney General of Oklahoma, Seth S. Branham, Assistant Attorney General, Oklahoma City, OK, attorneys for State on appeal.

## *OPINION*

C. JOHNSON, Vice–Presiding Judge.

¶ 1 Appellant, Elwood K. Jackson, Jr., was tried by a jury and convicted of three counts of First Degree Murder with Malice Aforethought [1] in the District Court of Comanche County, Case No. CF 2003–95. The State filed a Bill of Particulars alleging three aggravating circumstances: (1) the defendant knowingly created a great risk of death to more than one person; [2] (2) the murder was committed for the purpose of avoiding or preventing lawful arrest or prosecution; [3] and (3) the existence of a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society. [4] The jury found the existence of two aggravating circumstances [5] as to each of the three counts and assessed punishment at death on each of the three counts. The trial court sentenced Appellant accordingly. From this Judgment and Sentence Appellant has appealed. [6]

1. 21 O.S.2001, § 701.7(A).

2. 21 O.S.2001, § 701.12(2).

3. 21 O.S.2001, § 701.12(5).

4. 21 O.S.2001, § 701.12(7).

5. The jury found that the defendant knowingly created a great risk of death to more than one person and that the murder was committed for the purpose of avoiding or preventing lawful arrest or prosecution.

6. Appellant's Petition in Error was filed January 12, 2005. Appellant's Brief in Chief was filed November 16, 2005. Appellee's Answer Brief was filed March 16, 2006. Appellant's Reply Brief was filed April 3, 2006. This matter was

## FACTS

¶ 2 On February 11, 2003, the bodies of Mack Donald Wright, John A. Limberger and Lena Jean Bohay were discovered by police in a residence in Lawton, Oklahoma. Wright's death was caused by blunt force trauma to the head. Limberger and Bohay each died as a result of multiple gunshot wounds to the head. The residence in which the bodies were found was a home owned by Appellant and rented to Wright and Limberger. Bohay was Limberger's girlfriend.

¶ 3 Almost a week earlier, on February 7, 2003, Lawton police were investigating a report that Wright and Limberger's residence had been burglarized. Appellant became a suspect when it was discovered that he had pawned a black onyx ring stolen from Wright and Limberger's house. On February 12, 2003, Appellant was picked up by Lawton police on a charge of false declaration of ownership concerning the pawned stolen ring and a subsequent interrogation led to his arrest on this charge. Appellant was interrogated numerous times during the following nine days while he was detained at the Lawton Police Department. It was during these interrogations that evidence of his involvement in the homicides was revealed.

¶ 4 During the early interrogations, Appellant admitted to burglarizing Wright and Limberger's house several times and stealing small items and small amounts of money to support his addiction to crack cocaine. Although Appellant initially adamantly denied any involvement in the homicides, evidence to the contrary eventually began to emerge. Appellant finally admitted to killing all three victims and taking numerous items from the house.

¶ 5 On the morning of February 10, 2003, Appellant went to a car dealership in Lawton to talk to friend about employment and to borrow a gun from him. The friend loaned Appellant a 9 millimeter pistol. Later that morning Appellant took the gun with him to the victims' house. While he was in the house looking for things to steal, Appellant went into a bedroom where Wright was sleeping. When Wright woke up and saw him, Appellant struck Wright in the head several times with a fireplace poker he found in the bedroom. While Appellant was in Wright's bedroom, he heard Limberger enter the house. Wright was still alive and making noise so Appellant hit him a couple more times and put a pillow over his face. He then waited until Limberger was in his bedroom before he left Wright's bedroom. As he was walking down the hallway, the door to Limberger's bedroom opened. When Limberger looked out and saw Appellant he shot Limberger. It was not until Appellant went into Limberger's bedroom that he noticed another person in the room on the bed. This person was Bohay, and he shot her too.

¶ 6 When he left the house Appellant took several items including some traveler's checks that he had seen during a prior burglary but had not taken because he was afraid that they would be easily traceable if reported stolen. He also took Wright's mobile phone, Limberger's credit cards, driver's license, watch and necklace, and the fireplace poker he had used to kill Wright. Appellant cashed some of the stolen traveler's checks at a pawn store and this transaction was videotaped by the store's surveillance camera. The remaining traveler's checks as well as the other items taken were all either discarded or hidden. During the course of the investigation, Appellant told the detectives where he had deposited these items and all but the discarded travelers checks were recovered including the gun that Appellant had used to kill Limberger and Bohay.

## VOIR DIRE ISSUE

■ ¶ 7 Appellant argues in his first proposition that the trial court applied an unconstitutional standard in excusing two prospective jurors for cause, based upon their moral reservations about the death penalty. He specifically complains that prospective jurors Biggers and Rodgers were excused based upon their answers to the trial court's questions about whether consideration of the death penalty would violate their consciences. In *Witherspoon v. Illinois*, 391 U.S. 510, 522–23, 88 S.Ct. 1770, 1776–77, 20 L.Ed.2d 776

submitted to this Court on March 23, 2006. Oral Argument was held on January 16, 2007.

(1968), the Supreme Court held that it violates due process to exclude an otherwise eligible prospective juror based solely upon that juror's opposition to the death penalty. The only legitimate concern is, rather, whether each juror is willing to consider each of the authorized punishment alternatives, including the death penalty where appropriate. *Mitchell v. State*, 2006 OK CR 20, ¶ 39, 136 P.3d 671, 688–89. In addition, this Court has specifically condemned the "violence to your conscience" question as improper and confusing. *See Mayes v. State*, 1994 OK CR 44, ¶ 10, 887 P.2d 1288, 1297. However, while this error may warrant relief under appropriate circumstances, *see Cudjo v. State*, 1996 OK CR 43, ¶¶ 11–12, 925 P.2d 895, 899, it does not necessarily require it. "This Court will not reverse based on an error of the trial court unless that error has resulted in a miscarriage of justice or constitutes a substantial violation of a constitutional or statutory right." *Mayes*, 1994 OK CR 44, ¶ 10, 887 P.2d at 1297; 20 O.S.2001, § 3001.1.

¶ 8 Thus, Appellant's assertion that it is unconstitutional to remove prospective jurors based solely upon their moral reservations about the death penalty is correct. However, his claim that prospective jurors Biggers and Rodgers were excused for cause based solely on this unconstitutional consideration is not supported by the record. Rather, the record reflects that the trial court repeatedly told the prospective jurors that they were required by law to consider each of the three possible punishments if they were to sit on the jury. Although the court did question them about whether consideration of the death penalty would violate their consciences, this improper question was not the only question asked about their willingness to consider the death penalty.

¶ 9 When asked if he could consider all three punishment options, Mr. Biggers responded that he could not. The trial court inquired further, "The Court's going to give you instructions, and those instructions are going to require that you consider all three of those. And you're going to have to take an oath to follow that. Is the following of that oath going to violate—violate your con-

science? You think that's going to cause you a problem?" Mr. Biggers responded that it would cause a problem. At this point, the trial court responded that it was going to dismiss Mr. Biggers for cause and the court invited counsel to make a record. To this, defense counsel stated, "I think its kind of clear, Judge, that he can't follow the law. The standard is that he can't follow the law, not to violate his conscience." Thus, despite the inappropriate portion of the question defense counsel agreed that Mr. Biggers' inability to follow the law was clearly established. With regard to Mr. Rodgers, the Court pointedly asked him if he could consider each of the three punishments and he responded that he could not. He was excused without objection.

¶ 10 The record before this Court supports a finding that the trial court's decision to dismiss prospective jurors Biggers and Rodgers was not based solely on their answers to improper questions, but rather was properly based upon their admitted inability to follow the law. The voir dire, when considered in its entirety clearly established that prospective jurors Biggers and Rodgers were unable to follow the law and were therefore not legally eligible to serve on the jury. This was sufficient to justify dismissal for cause.

## ISSUE AFFECTING BOTH STAGES OF TRIAL

¶ 11 During trial the prosecution introduced into evidence several videotapes depicting numerous lengthy conversations Appellant had with Lawton homicide detectives over nine days. The tapes were admitted into evidence over the objection of defense counsel. On appeal, Appellant argues that the admission of the videotapes deprived him of his Fourteenth Amendment due process right to a fair trial and sentencing hearing because the tapes contained statements that were cumulative, inflammatory and unfairly prejudicial.

¶ 12 Right after the jury had been sworn and immediately before the prosecution was to proceed with its opening statement, defense counsel requested to make a record and objected to the videotapes asking that only the first two tapes be allowed into evi-

dence.[7] Defense counsel alleged that the tapes were cumulative and unfairly prejudicial.[8] Counsel asked the trial court to review the videotapes in their entirety before ruling on their admissibility. The trial court declined to do so and overruled defense counsel's objection stating, "I'm appalled that you've waited until this minute today to have any objection to the tapes, and you've had them in your possession for over a year."

¶ 13 On appeal, Appellant argues that the trial court erred in allowing the videotapes to be played for the jury over defense objection and without first reviewing them. In support of his claim Appellant cites to *Wackerly v. State*, 2000 OK CR 15, ¶ 59, 12 P.3d 1, 18, where this Court held that the trial court erred in failing to hold an *in camera* hearing to determine the admissibility of victim impact evidence in a capital sentencing proceeding. In doing so, we relied on precedent applying only to victim impact evidence, *see Cargle v. State*, 1995 OK CR 77, ¶ 76, 909 P.2d 806, 828, and we did not, nor did we intend to, expand this requirement to all types of evidence. Accordingly, we cannot agree with Appellant that the trial judge was legally required to review the videotapes in their entirety prior to ruling upon their admissibility.

¶ 14 Clearly there are many times when videotapes contain both portions which are, and which are not admissible. In many instances, the inadmissible portions of videotapes can be redacted before the videotape is viewed by the jury. *See Darks v. State*, 1998 OK CR 15, ¶ 15, 954 P.2d 152, 158. However-

er, it is incumbent upon trial counsel to make specific objections to specific content of the videotapes and request that the objectionable content be redacted. *See Stemple v. State*, 2000 OK CR 4, ¶ 33, 994 P.2d 61, 69. The record reflects that at a motion hearing on July 13, 2004, defense counsel advised the trial court that she and the prosecutor had agreed to sit down together and attempt to come to an agreement on the portions of the videotapes to be admitted. In fact, the prosecutor and trial counsel did agree prior to trial to redact part of the videotaped interrogation where a polygraph was mentioned. This appears to be the extent to which the videotapes were redacted and there is no indication from the record that defense counsel asked that other objectionable portions of the tapes be redacted.[9]

¶ 15 Although the tapes showed close to twenty hours of interrogation, the statements contained therein were not necessarily cumulative. During these lengthy interviews, Appellant did not steadfastly tell the same story over and over again, but rather divulged more and differing facts with each account. His admissions of involvement evolved slowly from his early confession to committing only burglary to his eventual confession to committing the three murders. Videotaped confessions are regularly admitted and admissible to show not only the content of the confession, but also to "show the jury the demeanor of a person and the circumstances under which confessions are made." *Coddington v. State*, 2006 OK CR 34, ¶ 86, 142 P.3d 437, 459. This is especially true where,

7. Defense counsel did not object to the introduction of the first two videotapes but sought to exclude the last three. The latter tapes contained Appellant's most damning statements. It was in the last tape that Appellant finally and fully confessed to committing the murders in this case by himself.

8. Defense counsel also argued that she had learned just that morning of the prosecutor's intent to introduce all of the tapes into evidence. She claimed that this constituted unfair surprise to the detriment of the defense and she asked that the prosecutor be sanctioned. The prosecutor responded that he had listed all of the videotapes on his exhibit list pursuant to discovery and had never indicated that he did not intend to introduce all of the tapes. The trial court noted

that defense counsel had access to the tapes and knowledge of their content. The court reminded counsel that it had asked both the prosecution and defense counsel numerous times whether there were any discovery issues. The court had continuously been told that there were not. Thus, while pretrial conferences designed to foreclose evidentiary problems such as this may be advisable and effective in many cases, there is no indication that such would have been so in the present case as the record does not indicate that either counsel availed themselves of the opportunities provided by the trial court to discuss these concerns.

9. The prosecutor indicated that references to the polygraph were the only portions of the videotapes that he and defense counsel discussed.

as here, Appellant's multiple accounts of the events that transpired were relevant to his defense of voluntary intoxication in that they allowed the jury to observe his demeanor and the clarity of his recall about the murders including his subsequent actions in trying to hide evidence.

¶ 16 In addition to his general argument that the material contained within the videotapes was cumulative, Appellant refers to trial counsel's specific argument that the detectives made repeated cumulative improper comments about his character. As to this, we note that the trial court strongly admonished the jury several times to disregard comments and observations made by the detectives during the interrogations. The trial court told the jury:

> You should focus on the statements that the defendant made to the officers and to the detectives doing the interrogation, not any comments or observations or personal feelings that the detectives may have during this questioning. The focus of this should be on the statements made by the defendant. You're to ignore as evidence any statements or observations made by the officers on this tape and all the tapes that will be played.

This Court presumes that juries follow their instructions. *See Head v. State*, 2006 OK CR 44, ¶ 26, 146 P.3d 1141, 1148. Accordingly, we find that any error in the admission of these comments was cured by the trial court's admonishment.

¶ 17 Appellant claims there were numerous irrelevant and prejudicial statements that should not have been introduced into evidence. He first complains about the introduction of evidence of his prior burglary of Wright and Limberger's residence. We find that this evidence was relevant as part of the *res gestae* because it was so closely connected to the charged offense as to form part of the entire transaction and it was necessary to give the jury a complete understanding of the crime. *See Warner v. State*, 2006 OK CR 40, ¶ 68, 144 P.3d 838, 868. Further, this relevant evidence, while prejudicial, was admissible as it was not so prejudicial that its probative value was substan-

tially outweighed by the danger of unfair prejudice. 12 O.S.2001, § 2403.

¶ 18 Appellant also complains that the videotapes showed him initially blaming a fictitious black man for having committed the murders and then making racist comments in reference to this non-existent person. We agree that the racial comments were arguably both irrelevant and prejudicial. However, we find that they do not warrant relief because in light of the overwhelming evidence of Appellant's guilt and the evidence supporting the aggravating circumstances, these relatively isolated comments were harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967).

¶ 19 In addition to his complaint about the cumulative nature of the comments the detectives made about his character, Appellant complains that the videotapes showed numerous comments by the detectives about his lack of remorse, his disrespect to the district attorney, judges and people of Comanche County and speculation about his motives. These statements by the detectives were not relevant. However, again, any error in their admission was cured by the trial court's admonishment to the jury to ignore as evidence any statements or observations made by the officers. *See Head*, 2006 OK CR 44, ¶ 26, 146 P.3d at 1148.

¶ 20 In summary, while portions of the videotaped interrogations included comments that were irrelevant and arguably prejudicial, any error in the admission of this evidence was either cured by the trial court's admonishment to the jury or was harmless beyond a reasonable doubt. The overwhelming majority of the material contained within these videotapes was admissible as relevant evidence, the probative value of which was not substantially outweighed by its prejudicial effect. Thus, we find that admission of the videotapes did not deprive Appellant of his Fourteenth Amendment due process right to a fair trial and sentencing hearing and accordingly, his request for relief on this proposition of error is denied.

## SECOND STAGE ISSUES

■ ¶ 21 Appellant next complains that his Eighth and Fourteenth Amendment rights were violated by the introduction of gruesome and unfairly prejudicial photographs. Over defense objection, the prosecution was allowed to introduce several photographs of the victims' bodies taken at both the crime scene and prior to the autopsy. On appeal, Appellant complains that these photographs were cumulative to the crime scene videotape and to each other as well as being inflammatory and lacking in probative value. He argues that because all first stage evidence was incorporated in the second stage, the introduction of these photographs so infected the sentencing proceeding with unfairness as to render the jury's imposition of the death penalty a denial of due process.[10]

■ ¶ 22 While first stage evidence may be received in the second stage of trial, it must be probative of second-stage issues. *See* 21 O.S.2001, § 701.10(C)("In the sentencing proceeding, evidence may be presented as to any mitigating circumstances or as to any of the aggravating circumstances . . ."). As stated above, the only aggravating circumstances alleged in this case were great risk of death, avoiding or preventing lawful arrest or prosecution and continuing threat. The prosecutor offered no grounds for the admission of the photographs and we do not find them relevant to any of the three alleged aggravating circumstances. Thus, it was error for these photographs to be incorporated into the second stage proceedings. However, this error is subject to harmless error analysis. In light of the overwhelming evidence supporting the aggravating circumstances, we find this error to have been harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. at 24, 87 S.Ct. at 828.

■ ¶ 23 Appellant's fourth proposition concerns the victim impact evidence admitted during the second stage of trial. During second stage, the prosecution, over defense objection, admitted victim impact testimony from three witnesses, Bohay's brother and

father and Limberger's mother. This Court has held that victim impact evidence should not be lengthy and should be restricted to the financial, emotional, psychological, and physical effects, or impact, of the crime itself on the victim's survivors. *Warner,* 2006 OK CR 40, ¶ 150, 144 P.3d at 884. *See also Hogan v. State,* 2006 OK CR 19, ¶ 73, 139 P.3d 907, 932.

¶ 24 The victim impact evidence introduced in this case is contained within only seventeen pages of the trial transcript. While portions of it were clearly emotional, most fell within the parameters of proper victim impact testimony and did not have such a prejudicial effect as to divert the jury from its duty to reach a reasoned moral decision on whether to impose the death penalty. *See DeRosa v. State,* 2004 OK CR 19, ¶¶ 78–79, 89 P.3d 1124, 1151. Although one witness did describe the victim as a child which is not relevant, *see Brown v. State,* 1998 OK CR 77, ¶ 84, 989 P.2d 913, 933, these few sentences did not render the whole of the victim impact testimony unconstitutional. Taken cumulatively, the victim impact testimony fell within the bounds of admissible evidence and its probative value was not substantially outweighed by the danger of unfair prejudice.

¶ 25 Appellant also argues that the victim impact statements were improper as they contained characterizations of the crime and requested the jury return a sentence of death. He claims that this violated specific prohibitions against such set forth by the United States Supreme Court in *Payne v. Tennessee,* 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991) and *Booth v. Maryland,* 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987). This Court has rejected this argument in the past and we are not persuaded to do otherwise at this time. *See Murphy v. State,* 2002 OK CR 24, ¶¶ 40–45, 47 P.3d 876, 884–85.

¶ 26 Finally, Appellant argues that victim impact evidence is unconstitutional as applied in Oklahoma's capital sentencing scheme be-

---

10. Because Appellant's only request for relief in this proposition is that the case be remanded to the district court for a new sentencing proceeding, he does not appear to challenge the impact

that this evidence may have had on the first stage proceedings. Accordingly, we will not address such.

cause it functions as a "super-aggravator" outside the statutory process of weighing aggravating and mitigating circumstances. We have rejected this argument before and do so again. *See Harris v. State*, 2004 OK CR 1, ¶ 58, 84 P.3d 731, 752. *See also Murphy*, 2002 OK CR 24, ¶ 47, 47 P.3d at 886. Appellant's fourth proposition warrants no relief.

¶ 27 In his fifth proposition Appellant argues that the prosecutor's improper comments deprived him of a fair sentencing proceeding in violation of his rights under the Eighth and Fourteenth Amendments to the United States Constitution. He specifically complains that the prosecutor improperly encouraged the jury to return a verdict of death out of sympathy for the victims. The prosecutor told the jury that the case was important to people who could not speak or seek justice for themselves and he asked them to take the time required to deliberate the case. He implored them to impose the death penalty as anything less would "be another travesty added to this case." Although Appellant acknowledges that these allegedly improper comments were not met with objection, he correctly advises that this Court can review the same for plain error. *See Jones v. State*, 2006 OK CR 5, ¶ 72, 128 P.3d 521, 544. It is true that it is improper for a prosecutor to ask the jury to have sympathy for victims. *See Warner*, 2006 OK CR 40, ¶ 190, 144 P.3d at 890. However, the challenged comments were not ones in which the prosecutor overtly sought sympathy for the victims and although they border upon impropriety, they do not rise to the level of plain error. This proposition requires no relief.

¶ 28 Appellant argues in his sixth proposition that the evidence was insufficient to establish beyond a reasonable doubt the "great risk of death to more than one person" aggravating circumstance with regard to Mack Wright. He specifically argues that because the evidence indicated that Limberger and Bohay entered the house after he killed Wright, it cannot be found that at the time Appellant killed Wright he knowingly created a great risk of death to more than one person.

¶ 29 "When the sufficiency of the evidence of an aggravating circumstance is challenged on appeal, this Court reviews the evidence in the light most favorable to the State to determine if any rational trier of fact could have found the aggravating circumstance beyond a reasonable doubt." *Washington v. State*, 1999 OK CR 22, ¶ 44, 989 P.2d 960, 974. The great risk of death aggravating circumstance is proved by acts of a defendant creating a great risk of death to another in close proximity, in terms of time, location, and intent to the killing. *Lockett v. State*, 2002 OK CR 30, ¶ 39, 53 P.3d 418, 430. This Court has also held that:

> [E]vidence is sufficient to support the aggravating circumstance of knowingly creating a great risk of death to more than one person where a defendant during the continuing course of conduct in which a murder is committed, threatens the life of another and has the apparent ability and means of taking that person's life.

*Id., quoting Smith v. State*, 1986 OK CR 158, ¶ 31, 727 P.2d 1366, 1373.

¶ 30 Appellant bases his argument upon testimony from the preliminary hearing not introduced into evidence at trial. The evidence presented at trial did not indicate, as Appellant asserts, that Limberger and Bohay were not in the house when he killed Wright, but rather indicates that they came into the house after he had initially assaulted Wright with the fireplace poker but before Appellant finally killed Wright. Appellant told detectives during the videotaped interview on February 20, 2003, that Wright was still making noise when he heard Limberger and Bohay come into the house so he hit Wright a couple more times and put a pillow over his face. He then hid until Limberger and Bohay went into the other bedroom and he shot Limberger when Limberger opened the bedroom door as Appellant was walking down the hall. From this evidence a jury could find beyond a reasonable doubt that Appellant's actions created a great risk of death to Limberger and Bohay in terms of time, location, and intent to his killing of Wright. This proposition is denied.

¶ 31 In his seventh proposition Appellant argues that the "great risk of death to more the one person" aggravating circumstance is unconstitutional as it performs no narrowing function and seems capable of automatic application when a defendant kills more than one person. This Court has, as Appellant acknowledges, consistently rejected similar arguments and upheld the constitutionality of this aggravator. *See McElmurry v. State*, 2002 OK CR 40, ¶ 104, 60 P.3d 4, 27; *Hooper v. State*, 1997 OK CR 64, ¶¶ 40–41, 947 P.2d 1090, 1106. However, he asks us to reconsider our prior rulings. As Appellant has not provided persuasive argument as to why we should reconsider this well-established precedent, we decline to do so at this time.

¶ 32 Next, Appellant argues that the aggravating circumstance that "the murder was committed for the purpose of avoiding arrest or prosecution" is unconstitutionally vague and overbroad. Again, we have consistently found this aggravating circumstance to be neither vague nor overbroad. *See Wackerly*, 2000 OK CR 15, ¶ 46, 12 P.3d at 15; *Toles v. State*, 1997 OK CR 45, ¶ 61, 947 P.2d 180, 192. We decline to hold otherwise at this time.

¶ 33 Finally, Appellant claims that trial errors, when considered cumulatively, deprived him of a fair sentencing determination. This Court has recognized that when there are "numerous irregularities during the course of [a] trial that tend to prejudice the rights of the defendant, reversal will be required if the cumulative effect of all the errors was to deny the defendant a fair trial." *DeRosa*, 2004 OK CR 19, ¶ 100, 89 P.3d at 1157, *quoting Lewis v. State*, 1998 OK CR 24, ¶ 63, 970 P.2d 1158, 1176. Upon review of Appellant's claims for relief and the record in this case we conclude that although his trial was not error free, any errors and irregularities, even when considered in the aggregate, do not require relief because they did not render his trial fundamentally unfair, taint the jury's verdict, or render sentencing unreliable. Any errors were harmless beyond a reasonable doubt, individually and cumulatively.

## MANDATORY SENTENCE REVIEW

¶ 34 Title 21 O.S.2001, § 701.13 requires this Court to determine "[w]hether the sentence of death was imposed under the influence of passion, prejudice or any other arbitrary factor; and whether the evidence supports the jury's or judge's finding of a statutory aggravating circumstance." After conducting this review, this Court may order any corrective relief that is warranted or affirm the sentence. 21 O.S.2001, § 701.13(E).

¶ 35 We have reviewed the record in this case in conjunction with Appellant's claims for relief and have found that his conviction and death sentence were not the result of the introduction of improper evidence, witness testimony, prosecutorial misconduct or trial court error. We therefore find Appellant's death sentence was not imposed because of any arbitrary factor, passion or prejudice. We also find that the evidence supports the jury's finding that the Appellant knowingly created a great risk of death to more than one person and that the murder was committed for the purpose of avoiding or preventing lawful arrest or prosecution.

## DECISION

¶ 36 The Judgment and Sentence of the district court is **AFFIRMED**. Pursuant to Rule 3.15, *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch.18, App. (2007), the **MANDATE** is **ORDERED** issued upon the delivery and filing of this decision.

A. JOHNSON, J.: concur.

LUMPKIN, P.J., CHAPEL and LEWIS, JJ.: concurs in results.

LUMPKIN, Presiding Judge, concur in result.

¶ 1 I concur in the Court's decision to affirm the judgments and sentences in this case. However, I disagree with the Court's attempt to parse a single trial into two separate trials.

¶ 2 A jury hears and decides guilt in a capital trial prior to proceeding into the bifurcated sentencing stage of the trial. 21 O.S.2001, § 701.10(A). During the second

stage, *additional* evidence is presented as to the aggravators alleged and any mitigating evidence the defendant may present. 21 O.S. 2001, § 701.10(C). The sentencing stage is before the same jury that decided guilt. 21 O.S.2001, § 701.10(A).

¶ 3 It is humanly impossible for jurors to wipe their minds clear of the evidence admitted during the guilt stage. The Court today finds error in the fact the State asked to have all first stage evidence admitted into the sentencing phase of the trial. While I recognize this has become a rote process in criminal trials, I can find no need or reason for it. The jury is at liberty to consider all the evidence admitted during trial. *See* 21 O.S.2001, § 701.10a(4) (providing that in cases where the Court has ordered a case remanded for resentencing, "[a]ll exhibits and a transcript of all testimony and other evidence properly admitted in the prior trial and sentencing shall be admissible in the new sentencing proceeding.") The sentencing stage evidence is *in addition to* the evidence presented during the guilt stage, not instead of that evidence. The idea that the jury must divorce themselves from the evidence presented during the guilt stage before considering the additional evidence admitted during the punishment stage, defies common sense. We should not engage in legalistic word gymnastics and thereby disregard the realities of the actual trial process. I find no error in the jury considering the first stage evidence while deciding punishment.